**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BIOLA DANIEL, ABEL DURAN, *and* TREKEELA PERKINS*, on behalf of themselves and all others similarly situated*, <br><br> Plaintiffs, <br><br> - against - <br><br> Tootsie Roll Industries, LLC, <br><br> Defendant. | Case No. 17 Civ. 07541 (NRB) (KNF) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TOOTSIE ROLL INDUSTRIES, LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT, OR, IN THE ALTERNATIVE, TO DISMISS OR STRIKE PLAINTIFFS' NATIONWIDE CLASS CLAIMS**

## TABLE OF CONTENTS

Table of Authorities ............................................................................................................ iv

Preliminary Statement ......................................................................................................... 1

Plaintiffs' Allegations and Facts Incorporated by Reference in the FAC ................................. 2

I.   PRIMARY LEGAL STANDARDS ............................................................................ 6

     A.   Procedural Law (Rule 12(b)(6)) ...................................................................... 6

     B.   Substantive Law .............................................................................................. 7

II.  ARGUMENT ............................................................................................................. 8

     A.   Plaintiffs Fail to State a Claim Under New York Law. ...................................... 8

          1.   Plaintiffs fail plausibly to allege that the slack-fill in the Junior
               Mints boxes is nonfunctional. .............................................................. 9

          2.   Plaintiffs fail plausibly to allege that a reasonable consumer would
               be misled by the packaging of the Junior Mints boxes. .......................... 13

          3.   Plaintiffs fail to plead a cognizable injury. .............................................. 16

          4.   Plaintiffs' fraud claims fail under Rule 9(b). ............................................ 17

     B.   The Mississippi Plaintiff's Claims Should Be Dismissed for Lack of
          Personal Jurisdiction and Failure to State a Claim or Plead Fraud with
          Particularity. .................................................................................................. 18

          1.   This Court lacks personal jurisdiction over the Mississippi
               plaintiff's claims. ................................................................................ 18

          2.   The FAC fails to state a claim under Mississippi law. ............................... 18

     C.   Plaintiffs' Claims for Injunctive Relief and Against Junior Mints Boxes
          They Did Not Purchase Should Be Dismissed for Lack of Standing. ................. 19

          1.   Plaintiffs lack standing to sue for injunctive relief. .................................. 19

          2.   Plaintiffs lack standing to sue for products they did not purchase. .......... 22

D.    Plaintiff's Nationwide Class Claims Should Be Dismissed or Stricken. .............. 24

    1.    This Court lacks personal jurisdiction over the claims of any plaintiff or class member who purchased Junior Mints outside New York. ...................................................................................................... 24

    2.    New York law applies only to plaintiffs and transactions in New York. ...................................................................................................... 26

    3.    Plaintiffs lack standing to assert claims under the laws of other states. ................................................................................................................ 27

    4.    Material differences in the consumer protection and fraud laws of the 50 states and D.C. preclude a nationwide class. ................................ 28

Conclusion ..................................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACLU v. Clapper*,
   785 F.3d 787 (2d Cir. 2015)...........................................................................20

*Anderson v. The Hain Celestial Grp., Inc.*,
   87 F. Supp. 3d 1226 (N.D. Cal. 2015) ............................................................22

*In re Arden Assorted Candy Drops*,
   80 F. Supp. 911 (D. Mass. 1948) ....................................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................6, 7, 11

*Aurigemma v. Arco Petroleum Prods. Co.*,
   734 F. Supp. 1025 (D. Conn. 1990).................................................................29

*In re Avon Anti-Aging Skincare Creams & Prod. Mktg. & Sales Practices Litig.*,
   2015 WL 5730022 (S.D.N.Y. Sept. 30, 2015)..........................................22

*Bautista v. CytoSport, Inc.*,
   223 F. Supp. 3d 182 (S.D.N.Y. 2016)...................................6, 7, 10, 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................13

*Blouin v. Johnson & Johnson*,
   2017 WL 4969345 (S.D. Miss. Nov. 1, 2017)...........................................19

*Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc.*,
   764 F.2d 928 (1st Cir. 1985)...........................................................................29

*In re Bridgestone/Firestone, Inc.*,
   288 F.3d 1012 (7th Cir. 2002) ..................................................................26, 29

*Bristol-Myers Squibb Co. v. Super. Ct.*,
   137 S. Ct. 1773 (2017)................................................................ *passim*

*Bush v. Mondelez, Int'l, Inc.*,
   2016 WL 5886886 (N.D. Cal. Oct. 7, 2016)...........................................4, 9, 14, 15

*Bush v. Mondelez Int'l, Inc.*,
   2016 WL 7324990 (N.D. Cal. Dec. 16, 2016)...........................................9, 11, 14, 15

*Castano v. Am. Tobacco Co.*,
    84 F.3d 734 (5th Cir. 1996) ........................................................29, 30

*State ex rel. Celebrezze v. Ferraro*,
    578 N.E.2d 492 (Ohio App. 1989)...............................................29

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)........................................................4

*City of L.A. v. Lyons*,
    461 U.S. 95 (1983)......................................................................20

*Clapper v. Amnesty Int'l USA*,
    133 S. Ct. 1138 (2013)................................................................22

*Clark v. McDonald's Corp.*,
    213 F.R.D. 198 (D.N.J. 2003)......................................................29

*Cole v. Chevron USA, Inc.*,
    554 F. Supp. 2d 655 (S.D. Miss. 2007).......................................19, 28

*Colonial Lincoln-Mercury Sales, Inc. v. Molina*,
    262 S.E.2d 820 (Ga. App. 1979).................................................29

*Cowen v. Lenny & Larry's, Inc.*,
    2017 WL 4572201 (N.D. Ill. Oct. 12, 2017)...............................23

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014).................................................................18, 24, 25, 26

*Davidson v. Kimberly-Clark Corp.*,
    873 F.3d 1103 (9th Cir. 2017) ....................................................21, 22

*Delgado v. Ocwen Loan Servicing, LLC*,
    2017 WL 5201079 (E.D.N.Y. Nov. 9, 2017)...............................28

*DiMuro v. Clinique Labs., LLC*,
    572 Fed. App'x 27 (2d Cir. 2014)...............................................22, 23

*Ebner v. Fresh Inc.*,
    2013 WL 9760035 (C.D. Cal. Sept. 11, 2013) ...........................14, 15

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ......................................................14, 15

*Elkind v. Revlon Consumer Prod. Corp.*,
    2015 WL 2344134 (E.D.N.Y. May 14, 2015) .............................20, 22

*Famular v. Whirlpool Corp.*,
  2017 WL 2470844 (S.D.N.Y. June 7, 2017) ................................................26

*Fermin v. Pfizer*,
  215 F. Supp. 3d 209 (E.D.N.Y. 2016) ...............................................8, 14

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013)................................................................8

*Ford Motor v. Majors*,
  2005 WL 1021551 (Minn. Ct. App. 2005) ...............................................29

*Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*,
  862 F. Supp. 2d 322 (S.D.N.Y. 2012)....................................................22

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) ...............................................................8

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
  317 F.R.D. 374 (S.D.N.Y. 2016) ........................................................23

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011)......................................................................24

*Goshen v. Mut. Life Ins. Co.*,
  98 N.Y.2d 314 (2002) .....................................................................26

*Harding v. Tambrands, Inc.*,
  165 F.R.D. 623 (D. Kan. 1996)..........................................................30

*Hart v. BHH, LLC*,
  2016 WL 2642228 (S.D.N.Y. May 5, 2016) .............................................23

*Hawkins v. UGI Corp.*,
  2016 WL 2595990 (C.D. Cal. May 4, 2016) ........................................14, 15

*In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.*,
  1 F. Supp. 3d 34 (E.D.N.Y. 2014) ......................................................27

*Hughes v. The Ester C Co.*,
  317 F.R.D. 333 (E.D.N.Y. 2016).........................................................30

*Humphrey v. Citibank NA*,
  2013 WL 5407195 (N.D. Miss. Sept. 25, 2013)........................................19

*In re Hyundai & Kia Fuel Econ. Litig.*,
  2018 WL 505343 (9th Cir. Jan. 23, 2018) ...............................................29

*Izquierdo v. Mondelez Int'l, Inc.*,
  2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ................................................................ *passim*

*Jurgensen v. Felix Storch, Inc.*,
  2012 WL 2354247 (S.D.N.Y. June 14, 2012) .......................................................................27

*Kacocha v. Nestle Purina Petcare Co.*,
  2016 WL 4367991 (S.D.N.Y. Aug. 12, 2016) ........................................................................4

*Knapp v. Potamkin Motors Corp.*,
  602 A.2d 302 (N.J. Super. Ct. 1991) ...................................................................................29

*Kommer v. Bayer Consumer Health*,
  252 F. Supp. 3d 304 (S.D.N.Y. 2017) ..........................................................................7, 8, 22

*Kommer v. Bayer Consumer Health*,
  2018 WL 627498 (2d Cir. Jan. 31, 2018) ...........................................................................20

*Lavie v. Procter & Gamble Co.*,
  105 Cal. App. 4th 496 (2003) ..............................................................................................29

*Lerner v. Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006) ................................................................................................18

*Lewis v. Casey*,
  518 U.S. 343 (1996) .............................................................................................................22

*Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*,
  211 F.R.D. 228 (S.D.N.Y. 2002) ....................................................................................26, 28

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015) ...........................................................................................17, 18

*Marentette v. Abbott Labs., Inc.*,
  201 F. Supp. 3d 374 (E.D.N.Y. 2016) ...................................................................................4

*Mendy v. JP Morgan Chase & Co.*,
  2014 WL 1224549 (S.D.N.Y. Mar. 24, 2014) ......................................................................26

*Milich v. State Farm Fire & Cas. Co.*,
  513 F. App'x 97 (2d Cir. 2013) .............................................................................................8

*Molo Oil Co. v. River City Ford Truck Sales, Inc.*,
  578 N.W.2d 222 (Iowa 1998) ...............................................................................................28

*Montgomery v. New Piper Aircraft, Inc.*,
  209 F.R.D. 221 (S.D. Fla. 2002) ..........................................................................................30

*Mosely v. Vitalize Labs, LLC*,
  2015 WL 5022635 (E.D.N.Y. Aug. 24, 2015).........................................................27

*Nat'l Western Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  89 Fed. App'x 287 (2d Cir. 2004).......................................................................26

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016).................................................................................19

*O'Connor v. Henkel Corp.*,
  2015 WL 5922183 (E.D.N.Y. Sept. 22, 2015) ....................................................10

*O'Shea v. Littleton*,
  414 U.S. 488 (1974)..............................................................................................20

*Orlander v. Staples, Inc.*,
  802 F.3d 289 (2d Cir. 2015)...........................................................................7, 16

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
  85 N.Y.2d 20 (1995) ..............................................................................................7

*Padin v. Oyster Point Dodge*,
  397 F. Supp. 2d 712 (E.D. Va. 2005) .................................................................29

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  230 F.R.D. 61 (D. Mass. 2005)............................................................................28

*Porras v. Bell*,
  857 P.2d 676 (Kan. App. 1993) ..........................................................................29

*In re Propranolol Antitrust Litig.*,
  249 F. Supp. 3d 712 (S.D.N.Y. 2017)..................................................................27

*In re Rezulin Prods. Liab. Litig.*,
  210 F.R.D. 61 (S.D.N.Y. 2002) ...........................................................................28

*Ross v. Quality Homes of McComb, Inc.*,
  2017 WL 5505111 (S.D. Miss. Nov. 16, 2017).....................................................19

*RRTM Restaurant Corp. v. Keeping*,
  766 S.W.2d 804 (Tex. App. 1988).......................................................................29

*Sanders v. Apple Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) ................................................................29

*Semenko v. Wendy's Int'l, Inc.*,
  2013 WL 1568407 (W.D. Pa. Apr. 12, 2013).......................................................29

*Siegel v. Levy Org. Dev. Co.*,
    607 N.E.2d 194 (Ill. 1992) ...........................................................................29

*Small v. Lorillard Tobacco Co.*,
    94 N.Y.2d 43 (1999) .................................................................................7, 16

*State v. Bob Chambers Ford, Inc.*,
    522 A.2d 362 (Me. 1987) .............................................................................29

*Szymczak v. Nissan N. Am., Inc.*,
    2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011) ..............................................26

*Thompson v. Jiffy Lube Int'l Inc.*,
    250 F.R.D. 607 (D. Kan. 2008) ....................................................................30

*Victor v. R.C. Bigelow, Inc.*,
    2014 WL 1028881 (N.D. Cal. Mar. 14, 2014) .............................................10

*Watson Labs., Inc. v. State*,
    2018 WL 372297 (Miss. Jan. 11, 2018) ......................................................19

*Weinstein v. eBay, Inc.*,
    819 F. Supp. 2d 219 (S.D.N.Y. 2011).............................................................8

*Williams v. Trail Dust Steak House, Inc.*,
    727 S.W.2d 812 (Tex. App. 1987).................................................................29

*Workman v. Plum Inc.*,
    141 F. Supp. 3d 1032 (N.D. Cal. 2015) ...................................................14, 16

*In re Zyprexa Prod. Liab. Litig.*,
    2008 WL 2696916 (E.D.N.Y. July 2, 2008)..................................................30

**Statutes**

Ala. Code § 8-19-10(f).........................................................................................28

Ark. Code Ann. § 4-88-107(a)(1) ........................................................................29

Colo. Rev. Stat. Ann § 6-1-105(1)(e) ..................................................................29

Ga. Code Ann. § 10-1-399(a) ..............................................................................28

Idaho Code Ann. § 48-603...................................................................................29

Miss. Code. Ann. § 75-24-1, *et seq.*..................................................................2, 6

Miss. Code Ann. § 75-24-15 ...................................................................6, 18, 19, 28

N.M. Stat. Ann. § 57-12-2(D) ........................................................................................29

N.Y. Agric. & Mkts. Law § 201(4) ...............................................................................7, 9

N.Y. Gen. Bus. Law § 349 ......................................................................................*passim*

N.Y. Gen. Bus. Law § 350 .......................................................................6, 7, 16, 26

Nev. Rev. Stat. Ann. § 598.0915 ..................................................................................29

Okla. Stat. Ann. tit. 78, § 53 ........................................................................................29

S.C. Code Ann. § 39-5-140(a) .......................................................................................28

S.D. Codified Laws § 37-24-6 .......................................................................................29

Tenn. Code Ann. § 47-18-109(a)(1) ............................................................................28

Utah Code Ann. § 13-11-4(2) .......................................................................................29

Wyo. Stat. Ann. § 40-12-105(a)(iii) ............................................................................29

**Rules**

Fed. R. Civ. P. 8 ...................................................................................................9, 10

Fed. R. Civ. P. 9(b) ..............................................................................2, 8, 9, 10, 17

Fed. R. Civ. P. 12(b)(1) .......................................................................................2, 19

Fed. R. Civ. P. 12(b)(2) ...........................................................................................2

Fed. R. Civ. P. 12(b)(6) ...................................................................................1, 6, 8

Fed. R. Civ. P. 12(f) ..........................................................................................2, 24

**Other Authorities**

21 C.F.R. § 100.100 ........................................................................................5, 7, 8, 9

*Misleading Containers; Nonfunctional Slack-Fill*, 58 Fed. Reg. 2957-01, 1993
     WL 1564 (Jan. 6, 1993) ...................................................................................9, 11

Defendant Tootsie Roll Industries, LLC ("Tootsie Roll") submits this Memorandum of Law in support of its motion to dismiss plaintiffs' First Amended Class Action Complaint ("FAC"), or, in the alternative, to dismiss or strike plaintiffs' nationwide class claims.

### Preliminary Statement

This case is a copy-cat of "slack-fill" class actions in other jurisdictions concerning Junior Mints products, and is one of dozens of slack-fill cases recently brought by this same plaintiffs' counsel in New York concerning different products.[1]  Applied to the Junior Mints products here, plaintiffs' one-size-fits-all FAC is deficient on several grounds.

A.  The New York plaintiffs fail to state a claim. Fed. R. Civ. P. 12(b)(6).  *First*, plaintiffs fail plausibly to allege that the empty space in the Junior Mints boxes does *not* serve any permitted functional purpose, which allegations are a necessary predicate for the packaging to be materially misleading.  *Second*, plaintiffs fail plausibly to allege that a reasonable consumer would be materially misled given the accurate weight and serving disclosures on the Junior Mints boxes.  *Third*, plaintiffs fail to plead a cognizable injury—namely, that the prices they paid for the Junior Mints boxes were higher *as a result* of the empty space.  Judge McMahon dismissed a slack-fill

---

[1] *See Bimont v. Unilever, Inc.*, 14-cv-7749-JPO (S.D.N.Y.) (deodorant); *Rodriguez v. Nature's Bounty, Inc.*, 15-cv-4547-SAS (S.D.N.Y.) (dietary supplement); *Errant v. Guittard Chocolate Co.*, 15-cv-9013-JGK (S.D.N.Y.) (cocoa powder); *Izquiero v. Mondelez Int'l, Inc.*, 16-cv-4697-CM (S.D.N.Y.) (candy); *Brown v. Harry & David, LLC*, 17-cv-999-DAB (S.D.N.Y.) (candy-coated popcorn); *Alce v. Wise Foods, Inc.*, 17-cv-2402-NRB (S.D.N.Y.) (potato chips); *Lau v. Pret a Manger (USA) Ltd.*, 17-cv-5775-LAK (S.D.N.Y.) (wrap sandwiches); *Stoltz v. Conagra Foods, Inc.*, 14-cv-5546-KAM (E.D.N.Y.) (cured meat sticks); *O'Connor v. Henkel Corp.*, 14-cv-5547-ARR (E.D.N.Y.) (deodorant); *Tjokronolo v. Proctor & Gamble Co.*, 14-cv-5577-NG (E.D.N.Y.) (deodorant); *Alberto v. Colgate-Palmolive Co.*, 14-cv-5649-CBA (E.D.N.Y.) (deodorant); *Collazo v. Now Health Group, Inc.*, 15-cv-328-ILG (E.D.N.Y.) (vitamin powder); *Fermin v. McNeil-PPC, Inc.*, 15-cv-1215-FB (E.D.N.Y.) (Tylenol); *Lee v. Starbucks Corp.*, 15-cv-1634-VMS (E.D.N.Y.) (coffee drinks); *Chong v. Kao USA Inc.*, 15-cv-2131-WFK (E.D.N.Y.) (deodorant); *Fermin v. Pfizer Inc.*, 15-cv-2133-SJ (E.D.N.Y.) (Advil); *Brown v. Unilever United States, Inc.*, 15-cv-3563-ENV (E.D.N.Y.) (deodorant); *Hu v. Hershey Co.*, 15-cv-3741-AMD (E.D.N.Y.) (chewing gum); *Hu v. Perfetti Van Melle USA Inc.*, 15-cv-3742-KAM (E.D.N.Y.) (chewing gum); *Ren v. Domega NY Int'l Ltd.*, 15-cv-6484-RJD (E.D.N.Y.) (egg rolls); *Hu v. Tristar Food Wholesale Co.*, 15-cv-6954-DLI (E.D.N.Y.) (egg rolls); *Godsonov v. Mars, Inc.*, 16-cv-1745-NG (E.D.N.Y.) (candy); *Riedel v. Church & Dwight Co.*, 16-cv-2093-SJF (E.D.N.Y.) (detergent); *Riedel v. Nuun & Co.*, 16-cv-4226-NGG (E.D.N.Y.) (drink tablets); *Merisier v. Herr Foods Inc.*, 16-cv-6350-FB (E.D.N.Y.) (potato chips); *Daniel v. Mondelez Int'l, Inc.*, No. 17-cv-174-MKB (E.D.N.Y.) (candy).  The last-cited case potentially is brought by a family member of the lead plaintiff in this case.

case brought by plaintiffs' counsel here, on just this basis, and respectfully, this Court should follow her lead. *See Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at \*7-\*8 (S.D.N.Y. Oct. 26, 2016). *Finally*, plaintiffs fail to plead fraud with particularity. Fed. R. Civ. P. 9(b).

B.   The claims of the Mississippi plaintiff also fail as a matter of law. *First*, there is no general jurisdiction over Tootsie Roll in New York and no specific jurisdiction here because this plaintiff's claims arise out of alleged contacts with Tootsie Roll in Mississippi. Fed. R. Civ. P. 12(b)(2); *see Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1781 (2017). *Second*, this plaintiff fails to allege compliance with a statutory prerequisite under the Mississippi Consumer Protection Act ("MCPA"), Miss. Code Ann. § 75-24-1, *et seq*. *Finally*, if they otherwise survive, the Mississippi plaintiff's claims fail plausibly to allege non-functionality, reasonable deception, and injury, and fail to plead fraud with particularity.

C.   Plaintiffs' claims for injunctive relief, and their claims concerning box sizes they did not purchase, should be dismissed for lack of standing. Fed. R. Civ. P. 12(b)(1).

D.   If the FAC is not dismissed entirely, plaintiffs' nationwide class claims should be dismissed or stricken. *First*, this Court lacks personal jurisdiction over the claims of any plaintiff or class member who purchased Junior Mints outside New York. *Second*, New York law does not apply to the claims of class members from other states; thus, a nationwide class action under New York law cannot be maintained. *Third*, plaintiffs lack standing to assert claims under the consumer protection and fraud laws of any state *other than* the state in which they purchased Junior Mints. *Fourth*, material differences among the applicable laws of the various states preclude plaintiffs from asserting claims on behalf of a nationwide class.

**Plaintiffs' Allegations and Facts Incorporated by Reference in the FAC**

Tootsie Roll makes boxes of Junior Mints, which are sold at retail outlets and movie theaters. FAC ¶ 1. Junior Mints are "[c]reamy mints in pure chocolate" with a soft fondant center.

*See id.* ¶¶ 3-8, 20, 94 (pictures).  Junior Mints are packaged in opaque rectangular cardboard boxes with a depth of one inch or less.  *See id.* ¶¶ 2, 57-60.  The candies, which are non-uniform in shape, are roughly the same width as the depth of the 3.5 oz. box.  *See id.* ¶ 20 (picture); Declaration of Gordon Brown ("Brown Decl.") ¶ 4.

The fronts of the Junior Mints boxes clearly display the net weight of the candy inside:



Brown Decl. Ex. C; *see also id.* Exs. A, F, I; FAC ¶¶ 3-8 (pictures).  The backs of the boxes state the number of servings in each container and the number of candy pieces in each serving, thereby fully disclosing the number of candy pieces in each box (for example, about 3.5 servings x 12 candies per serving = about 42 candies per box):



3

Brown Decl. Ex. D; *see also id.* Exs. B, G, J; FAC ¶¶ 85, 88, 97 (discussing statements on packaging regarding weight, number of servings, and serving size).[2]

In the original complaint, the sole named plaintiff (from New York) sought to challenge the amount of empty space in the 3.5 oz. Junior Mints box—the only box she had purchased, from a pharmacy in New York.  *See* Dkt. No. 1 ¶¶ 1, 31.  However, after this Court granted plaintiff leave to amend, *see* Dkt. No. 11, she added allegations purporting to challenge at least three other box sizes:  the 1.84 oz., 4.13 oz., and 10.5 oz. boxes.  FAC ¶ 1.  In addition, a second named plaintiff from New York was added who, five days before the FAC was filed,[3] allegedly purchased a 4.13 oz. box from a movie theater in New York.  At the same time, a third named plaintiff from Mississippi was added who "on several [unspecified] occasions" purchased the 3.5 oz. box and boxes of other unspecified sizes at unidentified Walmart and grocery stores in Mississippi.  *Id.* ¶¶ 37, 43, 46.  None of the named plaintiffs is alleged to have purchased any Junior Mints box *other than* the 3.5 oz. and 4.13 oz. sizes, or to have made any purchase outside of her home state.

Plaintiffs claim that they were "deceived into deciding to purchase the Products, whose packaging misrepresented the quantity of candy contained therein."  *Id.* ¶ 27.  For example, the original plaintiff claims that Tootsie Roll "promised [her] a full box of candy for $1.49, but it only delivered a partially full box, depriving her of the benefit of her bargain."  *Id.* ¶ 38; *see also id.*

---

[2] This Court may consider complete images of the Junior Mints packaging because it is referenced throughout the FAC and is central to plaintiffs' claims.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint."); *see also Kacocha v. Nestle Purina Petcare Co.*, 2016 WL 4367991, at *12 (S.D.N.Y. Aug. 12, 2016) (considering product packaging images because plaintiff's complaint "discusses each at length"); *Bush v. Mondelez, Int'l, Inc.*, 2016 WL 5886886, at *1 n.1 (N.D. Cal. Oct. 7, 2016) ("*Bush I*") (similar); *Marentette v. Abbott Labs., Inc.*, 201 F. Supp. 3d 374, 376 n. 5 (E.D.N.Y. 2016) (similar).  The FAC itself features multiple pictures of the Junior Mints boxes.  FAC ¶¶ 3-8, 17, 92-94.

[3] This new plaintiff appears to have purchased this box at the instruction of counsel, and therefore cannot have been deceived.  It is hard to imagine the contrary:  that she just happened to buy the box on December 28, felt deceived, decided to look for and found counsel over the New Year's holiday, who then added her to the FAC on January 2.

¶¶ 44, 47.  Plaintiffs do not allege that they were prevented from viewing the weight or serving disclosures, nor from holding, shaking, or otherwise inspecting the boxes prior to purchase.[4]

Plaintiffs claim that the Junior Mints boxes violate federal slack-fill regulations.  *Id.* ¶¶ 9-10, 51-52.  Plaintiffs recognize that slack-fill can be functional—and therefore expressly permitted—if it is "(a) necessary as part of the manufacturing process, (b) is the result of contents settling during shipping, or (c) is necessary to protect the product."  *Id.* ¶ 12; *see* 21 C.F.R. § 100.100(a)(1)-(6).  Yet plaintiffs include no allegations addressing the degree to which the packaging is necessary for product protection, nor the requirements of the packaging machines, nor the degree to which contents settle during shipping.  To the contrary, plaintiffs concede that "[s]ome of the Product's slack-fill maybe [*sic*] functional," FAC ¶ 12; *see also id.* ¶ 22, before baldly concluding that "most is definitely non-functional," *id.* ¶ 12.  *See also id.* ¶¶ 9-11, 29.

Rather than allege such factual support for their claims, plaintiffs merely point to Milk Duds.  *See id.* ¶¶ 13, 17, 19-22, 41-42, 45, 61-62, 66-73.  Plaintiffs recognize that Milk Duds are a different candy, packaged in boxes of different dimensions by a different manufacturer using different machines.  *See id.* ¶¶ 17, 19-20, 69.  Nevertheless, plaintiffs contend that the amount of slack-fill in the Milk Duds box (purportedly 23%) proves that the alleged additional slack-fill in Junior Mints boxes (purportedly 20% in the 3.5 oz. size) is non-functional.  *Id.* ¶ 41.  Plaintiffs contend that they were "injured in the amount of the proportion of [their] purchase price that paid for non-functional slack-fill in the Product."  *Id.* ¶ 38; *see also id.* ¶¶ 44, 47.

Plaintiffs also allege that the 4.13 oz. Junior Mints box has "identical dimensions" to the 3.5 oz. Junior Mints box, but contains more candy; and that this proves the slack-fill in the 3.5 oz.

---

[4] Plaintiffs allege that for the second New York plaintiff's movie theater purchase, "it was not logistically possible to manipulate packages before purchase."  *Id.* ¶ 79.  However, there is no allegation that this plaintiff was prevented from inspecting the package prior to purchase, or returning the package after inspecting it post-purchase.

box is nonfunctional.  *Id.* ¶¶ 3, 23-24.  In fact, the 4.13 oz. box is 0.0625 inches deeper than the 3.5 oz. box, creating over 9% more volume in the box.  Brown Decl. ¶¶ 4-5 & Ex. H.  Because Junior Mints candy pieces are roughly as wide as the 3.5 oz. box is deep (0.6875 inches), *see id.* ¶ 4; FAC ¶ 20 (picture), it is evident that the additional depth of the 4.13 oz. box, while seemingly minor, allows the box to accommodate more candy.

Based on asserted violations of federal regulations, plaintiffs assert claims for deceptive and unfair trade practices under New York General Business Law ("GBL") § 349 (Counts I and II), false advertising under GBL § 350 (Count III), and common law fraud (Count V), on behalf of a nationwide class.  "[T]o the extent New York common law is inapplicable to out-of-state Class members," plaintiffs purport to assert these nationwide claims "in conjunction with the substantively similar common law of other states and the District of Columbia," or, in the alternative, on behalf of a New York class.  FAC ¶¶ 113, 126, 134, 154 (headings); *see id.* ¶ 30.

The new Mississippi plaintiff also asserts claims in the alternative on behalf of a putative Mississippi class for violations of the MCPA (Count IV) "to the extent New York law is inapplicable to Mississippi class members."  *Id.* ¶ 114 (heading).

Plaintiffs seek both damages and an injunction barring Tootsie Roll from "packaging its Product with non-functional slack-fill."  *Id.* ¶ 120.

## I.   PRIMARY LEGAL STANDARDS

### A.   Procedural Law (Rule 12(b)(6))

"In considering whether a complaint states a claim upon which relief can be granted, the court begins by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth, and then determines whether the remaining well-pleaded factual allegations, accepted as true, plausibly give rise to an entitlement to relief."  *Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 187-88 (S.D.N.Y. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679

(2009)) (internal marks omitted).  This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 188 (quoting *Iqbal*, 556 U.S. at 679) (internal marks omitted).  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief."  *Id.* (quoting *Iqbal*, 556 U.S. at 679) (internal marks omitted).

### B.    Substantive Law

FDA regulations establish that slack-fill is functional (and therefore not misleading) when the empty space pertains to any one of six enumerated purposes, including: (1) protection of the contents of the package; (2) the requirements of the machines used for enclosing the contents in such package; and (3) unavoidable product settling during shipping and handling.  21 C.F.R. § 100.100(a).  Under New York law, packaging can be misleading based on the amount of fill, N.Y. Agric. & Mkts. Law § 201(4), but is not misleading if it complies with federal regulations, GBL § 349(d).  *See Izquierdo*, 2016 WL 6459832, at *3.

To state a claim for deceptive trade practices or false advertising under GBL sections 349 or 350, plaintiff must plausibly allege (1) that the challenged act or practice was consumer-oriented, (2) that it was misleading in a material way, and (3) that plaintiff suffered injury as a result of the deceptive act.  *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 310 (S.D.N.Y. 2017) (citing *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)).  A claim for common law fraud requires plausible allegations of a representation of material fact, falsity, scienter, reliance, and injury.  *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 57 (1999).

Conduct is materially misleading if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Kommer*, 252 F. Supp. 3d at 310-11 (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995)).  "[T]he applicable legal standard is whether a reasonable consumer, not the least sophisticated

consumer, would be misled by Defendants' actions." *Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011). "This inquiry is an objective one, which . . . may be resolved as a matter of law on a motion to dismiss." *Kommer*, 252 F. Supp. 3d at 311; *see Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) ("[A] court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer.").

Courts cannot focus on the size of a product's packaging to the exclusion of other disclosures, as allegedly misleading packaging must be viewed as a whole. *See Fink*, 714 F.3d at 742; *Milich v. State Farm Fire & Cas. Co.*, 513 F. App'x 97, 99 (2d Cir. 2013); *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995). "Assuming that a reasonable consumer might ignore the evidence plainly before him attributes to consumers a level of stupidity" that is not actionable. *Kommer*, 252 F. Supp. 3d at 312 (internal marks omitted); *see also Fermin v. Pfizer*, 215 F. Supp. 3d 209, 212 (E.D.N.Y. 2016) ("The suggestion that [packaging] laws should cover [a plaintiff's] failure to read an unambiguous [label] does not pass the proverbial laugh test.").

## II.    ARGUMENT

The FAC should be dismissed in its entirety and with prejudice. *First*, the New York plaintiffs fail to state a claim under Rule 12(b)(6) and fail to plead fraud with the requisite particularity under Rule 9(b). *Second*, this Court lacks personal jurisdiction over the new Mississippi plaintiff's claims, which in any event also fail under Rules 12(b)(6) and Rule 9(b). *Third*, plaintiffs lack standing to pursue their claims for injunctive relief and their claims against any Junior Mints boxes *other than* the 3.5 oz. and 4.13 oz. boxes. *Fourth*, if the FAC is not dismissed in its entirety, plaintiffs' nationwide class claims should be dismissed or stricken.

### A.    Plaintiffs Fail to State a Claim Under New York Law.

As noted above, FDA regulations expressly permit the use of slack-fill for any one of six "functional" purposes. *See* 21 C.F.R. § 100.100(a). Under New York law, packaging can be

misleading based on the amount of fill, N.Y. Agric. & Mkts. Law § 201(4), but packaging is not misleading if it complies with federal regulations, GBL § 349(d).  Moreover, "[o]paque containers with slack-fill at the top are common in the snack market," and reasonable customers "thus expect some slack fill."  *Bush I*, 2016 WL 5886886, at *3.  Here, plaintiffs seek to hold Tootsie Roll liable for doing precisely what the FDA regulations and New York law allow, and what a reasonable customer would expect.

        **1.**      **Plaintiffs fail plausibly to allege that the slack-fill in the Junior Mints boxes is nonfunctional.**

Plaintiffs' New York claims should be dismissed because they fail to allege sufficient, non-conclusory facts to support their contention that the slack-fill in the Junior Mints boxes is nonfunctional, such that it could be materially misleading.

As mentioned, FDA regulations establish that slack-fill is functional (and therefore not misleading) as a matter of law when the empty space performs certain enumerated functions.  21 C.F.R. § 100.100(a) (acceptable functions include protection of contents of package, requirements of machines used for packaging, and unavoidable product settling).  As the FDA has explained, enforcement of slack-fill regulations is "based on the capabilities of individual processing and packaging facilities and on the specific physical properties (e.g., bulk density, uniformity, tendency to settle, and need for protection) of individual products."  *Misleading Containers; Nonfunctional Slack-Fill*, 58 Fed. Reg. 2957-01, 2960, 1993 WL 1564 (Jan. 6, 1993).

Here, the FAC contains no allegation directly addressing the need for protection of Junior Mints candies, the requirements of the packaging machines, or the degree of unavoidable product settling.  Instead, plaintiffs' allegations are mere conclusions.  But conclusory allegations that slack-fill serves none of the permitted functions "do not suffice for either Rule 8's plausibility standard or Rule 9's particularity standard for pleading."  *Bush v. Mondelez Int'l, Inc.*, 2016 WL

7324990, at *4 (N.D. Cal. Dec. 16, 2016) ("*Bush II*") (internal marks omitted); *see also, e.g.*, *Bautista*, 223 F. Supp. 3d at 190 ("[W]holly conclusory allegations are insufficient to state a nonfunctional slack fill claim."); *Victor v. R.C. Bigelow, Inc.*, 2014 WL 1028881, at *16 (N.D. Cal. Mar. 14, 2014) (complaint consisting of "litany of FDA regulations and federal statutes" and conclusory assertions that defendant's actions were unlawful or fraudulent failed to satisfy Rules 8 or 9(b)). Plaintiffs must allege facts sufficient to explain why the slack-fill in the Junior Mints boxes is nonfunctional with respect to the relevant factors, but have failed to do so here.

*Bautista* is instructive. There, the plaintiff claimed that the defendant's protein powder package contained 30% non-functional slack-fill and therefore was materially misleading. 223 F. Supp. 3d at 190. The plaintiff alleged that "the empty space [in the product] was not used to protect product, necessary for enclosing the product, or because of settling." *Id.* (internal marks omitted). The court found this conclusory allegation insufficient to state a claim under GBL section 349 or for common law fraud, because plaintiff "provides no facts rendering that conclusion plausible." *Id.* Although it "may be challenging for a plaintiff to present such facts before discovery," Judge Seibel recognized, "the law is clear that the doors of discovery are not unlocked for a plaintiff armed with nothing more than conclusions." *Id.* at 191 (internal marks and citations omitted); *see also O'Connor v. Henkel Corp.*, 2015 WL 5922183, at *9 (E.D.N.Y. Sept. 22, 2015) (dismissing claims where complaint "does not plead facts sufficient to . . . infer[] that the under-filling was caused by intentional and systematic practice, rather than one of [two] authorized causes").

The FAC here fails for the same reason the complaint in *Bautista* failed. As in *Bautista*, plaintiffs fail to plead any *factual* support, addressing the relevant factors, for their contention that the slack-fill in the Junior Mints boxes is nonfunctional. While recognizing that slack-fill may be functional for several purposes, FAC ¶ 12, plaintiffs address none of these purposes head on, and allege no facts whatsoever to explain why the slack-fill in the Junior Mints box does *not* serve one

of these purposes.  Indeed, the court in *Bautista* recognized that the burden rests on plaintiffs to make the necessary allegations regardless of the purported difficulty.  Tootsie Roll should not have to defend this putative nationwide class action if plaintiffs are unwilling or unable to do what is necessary to investigate the actual functionality of the slack-fill they seek to challenge.

Factual allegations directly addressing the slack-fill factors are particularly important here given the obvious likely functions of the Junior Mints slack-fill.  Plaintiffs do not confront, for example, the common sense inference that Junior Mint candies, with their soft interiors and wide, non-uniform shapes, *see* FAC ¶¶ 3-8, 17, 20, 92-94 (pictures), could be easily damaged if filled tightly and squeezed against one another in the box.  In addition, they can stack on top of one another in myriad ways during shipping.  *See, e.g.*, *Bush II*, 2016 WL 7324990, at *4 (rejecting conclusory allegations that slack-fill was not caused by settling as "illogical and implausible").  Instead, plaintiffs simply assert the conclusion that while *some* of the slack-fill may be functional, "most is definitely non-functional."  FAC ¶ 12; *see also id.* ¶¶ 9-11, 29.  These allegations are threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, which fail to state a claim.  *Iqbal*, 556 U.S. at 678; *Bautista*, 223 F. Supp. 3d at 190.

Plaintiffs address functionality only indirectly by alleging that there is less slack-fill in Milk Duds boxes.  *See* FAC ¶¶ 13, 17, 19-22, 41-42, 45, 61-62, 66-73.  But this argument—which is premised upon a comparison of different products manufactured by different companies at different packaging facilities (*see id.* ¶¶ 17, 19-20, 69)—fails.  As the FDA has advised,

> differences in the physical characteristics of a given product, including the need to protect the product from breakage, and precision of filling equipment *result in a high degree of variability in the level of functional slack-fill within commodity classes*.

*Misleading Containers; Nonfunctional Slack-Fill*, 58 Fed Reg. at 2959 (emphasis added).  Thus, "it is possible to distinguish between functional and nonfunctional slack-fill on a plant-by-plant basis for specific products in given container sizes."  *Id.*

11

Moreover, the Milk Duds candies that plaintiffs point to obviously are not comparable.  As pictures in the FAC itself reveal, Junior Mints are creamy mints, while Milk Duds have a hard caramel, nearly indestructible, interior.  *See* FAC ¶¶ 17, 20 (pictures), 20.  Milk Duds clearly have much less need for protection—a factor plaintiffs simply do not address in the FAC.  Drawing on its experience and common sense, this Court may infer that more fragile candies could be crushed more easily than more durable candies if packed too tightly.  This Court may also infer that Junior Mints, which are packaged in narrower boxes, might need more room to settle.  *See* Brown Decl. ¶¶ 3-4; FAC ¶ 19.  Such differences in composition and size will naturally result in a different need for protection and a different tendency to settle.  Thus, the fact that Milk Duds allegedly contain less slack-fill than Junior Mints does not support the inference that the slack-fill in the Junior Mints boxes is nonfunctional.  Tellingly, plaintiffs elected *not* to compare the Junior Mints packaging and slack-fill with a more comparable product, such as York Minis:



Instead, plaintiffs chose a product that made the point they wanted to make, and ignored any close comparable products.  It is not hard to surmise what a comparison with York Minis would show, which is why plaintiffs ignored that product.[5]

---

[5] Even York Minis are not entirely comparable because the candies, particularly the mint centers, are more firm than Junior Mints.

The point here is not to introduce evidence to raise a factual question about comparability. The point, rather, is that plaintiffs impermissibly seek to carry their pleading burden by a comparison to a *very different product*, instead of alleging facts concerning the Junior Mints product itself that directly address the need to protect the fragile candies, the requirements of the packaging machines, and the degree of settling.  Such comparisons should be rejected under well-reasoned precedents, including because plaintiffs will always be able to find products with less slack-fill—particularly if they are permitted simply to avoid confronting differing functionality factors.  Such comparisons are also insufficient because they are fraught with the likelihood, as demonstrated here, that purportedly comparable products will be selected based on expediency, while more comparable products will be ignored because they would tell the opposite story.  On this point, it is telling that in *Izquierdo*, the same counsel representing plaintiffs here used Junior Mints as the purported comparator product, alleging that Junior Mints provided *superior value* to Sour Patch Kids on a price-per-ounce basis—and more value too than Hot Tamales.  *See* Declaration of David W. Haller ("Haller Decl.") Ex. A (*Izquierdo* Complaint) ¶ 57.

Plaintiffs thus fail to articulate non-conclusory reasons why the slack-fill in the Junior Mints boxes does not satisfy one or more of the FDA's six permissible functions.  Given the absence of factual allegations, it is just as possible—and indeed more plausible—that the empty space in the boxes serves a functional purpose.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plaintiffs' claims should be dismissed on that basis alone.

> **2.      Plaintiffs fail plausibly to allege that a reasonable consumer would be misled by the packaging of the Junior Mints boxes.**

Plaintiffs' claims also should be dismissed because they fail plausibly to allege that a reasonable consumer would be misled by the size of the boxes, given the accurate weight and serving disclosures on the boxes.

"Opaque containers with slack-fill at the top are common in the snack market." *Bush I*, 2016 WL 5886886, at *3.  "Targeted consumers thus expect some slack-fill." *Id.* (internal marks omitted); *see also In re Arden Assorted Candy Drops*, 80 F. Supp. 911, 913 (D. Mass. 1948) (the "ordinary person" should "expect some slack or air space" in products packed by machine).  In such circumstances, "no reasonable consumer expects the . . . overall size of the packaging to reflect directly the quantity of product contained therein." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 967 (9th Cir. 2016) ("*Ebner II*"); *accord Bush I*, 2016 WL 5886886, at *3.

Moreover, "any potential ambiguity" about the contents of an opaque container can be resolved by consulting disclosures on the outside of the container concerning the quantity or weight of the product—as courts across the country have held.  *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015); *see, e.g.*, *Fermin*, 215 F. Supp. 3d at 212; *Ebner v. Fresh Inc.*, 2013 WL 9760035, at *7 (C.D. Cal. Sept. 11, 2013) ("*Ebner I*"), *aff'd*, 838 F.3d 958, 967 (9th Cir. 2016); *Bush II*, 2016 WL 7324990, at *2; *Bush I*, 2016 WL 5886886, at *3; *Hawkins v. UGI Corp.*, 2016 WL 2595990, at *3 (C.D. Cal. May 4, 2016).

For example, in *Fermin*, the plaintiffs (represented by the same lawyers representing plaintiffs here) alleged that the size of Advil bottles "led them to have an expectation that the entire volume of the packaging would be filled to capacity with pills," notwithstanding that the label displayed the total pill count.  215 F. Supp. 3d at 211-12.  The court dismissed their unlawful packaging claims, reasoning that:

> Plaintiffs provide no basis for disregarding the clearly stated pill-counts on the labels, nor do they dispute the fact that the tablet-count is clearly and prominently displayed on each of the labels. . . .  [T]he labels plainly negate any supposed "reliance" on the size of the packaging as it is impossible to view the products without also reading the total number of pills contained in each package.  It defies logic to accept that the reasonable consumer would not rely upon the stated pill count . . . .

*Id.* at 212 (citations omitted).  *See also Ebner I*, 2013 WL 9760035, at \*7-\*8 (dismissing claim based on "accurate label stating the net quantity of product") (internal marks omitted); *Ebner II*, 838 F.3d at 967 (affirming; noting accurate net weight label; "no reasonable consumer expects the weight or overall size of the packaging to reflect directly the quantity of product contained therein"); *Bush I*, 2016 WL 5886886, at \*3 (dismissing slack-fill claim based on accurate weight and quantity disclosures; "No reasonable consumer expects the overall size of the packaging to reflect precisely the quantity of product contained therein."); *Bush II*, 2016 WL 7324990, at \*2 (plaintiff's deception claim "is implausible because . . . product labels disclose the net weight and number of cookies per container and consumers expect there to be some slack-fill in opaque snack containers"); *Hawkins*, 2016 WL 2595990, at \*3 (dismissing claims based on accurate weight disclosure and consumer's ability to "determine whether product remains by audibly sloshing remaining liquid around in the cylinder, or by feeling the heft of a partially full cylinder").[6]

Applying these principles, it is not plausible that the Junior Mints packaging would mislead a reasonable consumer.  The boxes accurately disclose (1) the weight of the Junior Mints in the boxes, and (2) the number of pieces of candy in the box.  *See* FAC ¶¶ 3-8 (pictures), 85, 88, 97; Brown Decl. Exs. A-D, F-G, I-J.  And as in *Hawkins*, the empty space in the boxes is obvious and tangible when handling them—specifically, by rustling the candy inside the boxes.  Plaintiffs do not allege that the printed disclosures are false, that the candies weighed less than 3.5 (or 4.13) ounces, or that they received fewer than 42 (or 48) pieces of candy.  They also do not allege that they were unable to view the front or back panels.  Nor do plaintiffs allege that they were prevented

---

[6] FDA guidance provides "that the presence of an accurate net weight statement does not eliminate the misbranding that occurs when a container is made, formed, or filled so as to be misleading."  *Bush II*, 2016 WL 7324990, at \*3. This guidance, however, is not binding authority for purposes of claims brought under New York consumer protection laws.  "Courts, not the FDA, determine whether a product is misleading under those laws."  *Id.*  Indeed, "[t]hough *Ebner* involved a cosmetic product . . . nothing in the decision suggests that the Ninth Circuit's application of the reasonable consumer test under state consumer protection laws would have been different in the context of food, or that the court was influenced by, or even considered, the existence of any FDA regulations (or the lack thereof)."  *Id.*

from handling or inspecting the boxes at the time of their purchases, which would have resolved "any potential ambiguity" about the amount of slack-fill in the boxes. *Workman*, 141 F. Supp. 3d at 1035. To the contrary, plaintiffs acknowledge "the possibility that manipulating a package might yield additional insight into its contents." FAC ¶ 78. Because plaintiffs fail to allege facts to move their claims from conceivable to plausible, the FAC should be dismissed in its entirety.

### 3. Plaintiffs fail to plead a cognizable injury.

Plaintiffs' New York claims should be dismissed because they fail to plead a cognizable injury. Plaintiffs' claims require plausible allegations that "on account of a materially misleading practice, [they] purchased a product and did not receive the full value of [their] purchase." *Orlander*, 802 F.3d at 302. In other words, plaintiffs must allege a "connection between the misrepresentation and [some] harm from, or failure of, the product." *Small*, 94 N.Y.2d at 56.

Here, plaintiffs allege that they "would not have paid [for the Junior Mints] had [they] known that the box was more than one third full of air or had the box been proportioned to its actual contents." FAC ¶ 38; *see also id.* ¶¶ 16, 31, 44, 47. Such allegations fail as a matter of law to plead a cognizable injury under GBL sections 349 or 350 or common law fraud. Indeed, Judge McMahon dismissed nonfunctional slack-fill claims brought by plaintiffs' counsel here concerning different candies on just this ground. *See Izquierdo*, 2016 WL 6459832, at *7. Rejecting the plaintiffs' allegations that they "were financially injured after purchasing the Candy and receiving less Candy than they believed they bargained for," Judge McMahon reasoned that plaintiffs' theory

> boils down to the very argument that the New York Court of Appeals expressly rejected as a flawed deception as injury theory—that is, that consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under General Business Law § 349.

*Id.* (citing, *inter alia*, *Small*, 94 N.Y.2d at 56); *see also Small*, 94 N.Y.2d at 56-57 (dismissing GBL section 349 and common law fraud claims for failure to plead a legally cognizable injury).

Here, too, there are no well-pleaded factual allegations to support the inference that plaintiffs paid a *higher* price than they would have paid had the Junior Mints been packaged in smaller boxes. Plaintiffs do not dispute, for example, that Tootsie Roll prices its products by weight; and plaintiffs affirmatively acknowledge that "[l]arger *quantities* of Junior Mints® candy cost more than smaller quantities of it." FAC ¶ 39 (emphasis added). The natural inference is that plaintiffs are paying for the candy in the box, regardless of its size. Plaintiffs' comparison to Milk Duds also "tells the Court nothing about the value of the Candy, or whether the cost of the Candy was inflated by [Tootsie Roll's] allegedly misleading packaging." *Izquierdo*, 2016 WL 6459832, at *7. Nor do plaintiffs allege that the prices they paid for the Junior Mints boxes were set by Tootsie Roll—rather than, as one would expect, the stores and/or movie theater where they purchased those boxes. *See id.* ("even if the Candy were marked at a higher price simply because it came in a big box . . . the Complaint still fails to state that [the manufacturer], and not the ultimate Candy seller, benefited from any price inflation.").

As mentioned, in the *Izquierdo* case, plaintiffs' counsel here alleged that Junior Mints are a high-value product on a price-per-ounce basis. Haller Decl. Ex. A (*Izquierdo* Complaint) ¶ 57. Plaintiffs' counsel is hard pressed to take a different position here. Because plaintiffs "impermissibly set up the deception as both act and injury, a theory specifically disallowed by [New York] courts," their claims should be dismissed. *Izquierdo*, 2016 WL 6459832, at *7.

### 4. Plaintiffs' fraud claims fail under Rule 9(b).

Plaintiffs' fraud claims also fail because they are not pled with particularity. "Rule 9(b) places two further burdens on fraud plaintiffs—the first goes to the pleading of the circumstances of the fraud, the second to the pleading of the defendant's mental state." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015). Here, plaintiffs allege that a misleading impression is made by the Junior Mints boxes, but point to no statements alleged to be

actually false; indeed the statements on the box are all demonstrably true. Nor are any facts alleged from which a plausible inference of scienter could be drawn. *See id.* ("though mental states may be pleaded 'generally,' Plaintiffs must nonetheless allege facts 'that give rise to a strong inference of fraudulent intent'") (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006)). Plaintiffs plead no facts giving rise to a strong inference of fraudulent intent here. Their fraud claims therefore should be dismissed for this additional reason.

      **B.**    **The Mississippi Plaintiff's Claims Should Be Dismissed for Lack of Personal Jurisdiction, and Failure to State a Claim or Plead Fraud with Particularity.**

As noted above, the FAC adds a named plaintiff from Mississippi (Trekeela Perkins) who purports to assert claims under Mississippi law (to the extent New York law does not apply). *See* FAC ¶ 46 & Count IV. Ms. Perkins' claims should be dismissed for lack of personal jurisdiction, for failing to state a claim, and for failing to plead fraud with particularity.

      **1.**    **This Court lacks personal jurisdiction over the Mississippi plaintiff's claims.**

As explained in Part II.D.1 below, there is no basis to assert general personal jurisdiction over Tootsie Roll in New York. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760-61 (2014); FAC ¶ 49. This Court also lacks specific personal jurisdiction over Tootsie Roll with respect to the claims of Ms. Perkins, whose contacts with Tootsie Roll arise out of purchases in Mississippi, not New York. *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781. Her claims therefore must be dismissed.

      **2.**    **The FAC fails to state a claim under Mississippi law.**

Even if there were a basis to assert personal jurisdiction over Ms. Perkins' claims, those claims still would fail as a matter of law. As explained in Part II.D.2 below, New York's choice-of-law rules require application of Mississippi law to Ms. Perkins's claims. But the MCPA requires a plaintiff, before suing, to "first ma[ke] a reasonable attempt to resolve any claim through an informal dispute settlement program approved by the Attorney General." Miss. Code. Ann. §

75-24-15(2).  "Mississippi law is clear that failure to satisfy [this] prerequisite []is fatal to a MCPA claim."  *Humphrey v. Citibank NA*, 2013 WL 5407195, at *6 (N.D. Miss. Sept. 25, 2013).  Because Ms. Perkins does not allege that she complied with this requirement, any MCPA claim she purports to assert must be dismissed.  *See id.* (dismissing claim); *see also Ross v. Quality Homes of McComb, Inc.*, 2017 WL 5505111, at *6 (S.D. Miss. Nov. 16, 2017) (same); *Blouin v. Johnson & Johnson*, 2017 WL 4969345, at *3 (S.D. Miss. Nov. 1, 2017) (same); *Cole v. Chevron USA, Inc.*, 554 F. Supp. 2d 655, 668 (S.D. Miss. 2007) (same).

Even if Ms. Perkins' Mississippi claims otherwise were proper, they would still fail for substantially the same reasons that the New York plaintiffs' claims fail.  *See* Miss. Code Ann. § 75-24-5(1); *Watson Labs., Inc. v. State*, 2018 WL 372297, at *7, *12 (Miss. Jan. 11, 2018).  Ms. Perkins fails plausibly to allege non-functionality, reasonable deception, and injury, and fails to plead fraud with particularity.  Indeed, Ms. Perkins does not even allege the most basic particulars of her purchases, omitting *where* in Mississippi she made the purchases, the dates of the purchases, and (with the exception of the 3.5 oz. box) the sizes of the boxes she purchased.  *See* FAC ¶ 46. Her claims, too, are thus subject to dismissal.

### C.   Plaintiffs' Claims for Injunctive Relief and Against Junior Mints Boxes They Did Not Purchase Should Be Dismissed for Lack of Standing.

If the FAC is not dismissed in its entirety, plaintiffs' claims for injunctive relief and their claims against Junior Mints boxes they did not purchase should be dismissed for lack of standing. Fed. R. Civ. P. 12(b)(1).

### 1.   Plaintiffs lack standing to sue for injunctive relief.

Plaintiffs lack standing to seek injunctive relief where they fail to establish a "real or immediate threat" of future injury.  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016). "The Supreme Court has repeatedly reiterated that threatened injury must be certainly impending

to constitute injury in fact, and that allegations of possible future injury are not sufficient." *ACLU v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) (internal marks omitted); *see also City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983). "Past injuries therefore do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that he is likely to be harmed again in the future in a similar way." *Kommer v. Bayer Consumer Health*, 2018 WL 627498, at *1 (2d Cir. Jan. 31, 2018) (internal marks omitted); *see also O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) (similar). Where plaintiffs are "aware of the alleged misrepresentations that they challenge, . . . there is no danger that they will again be deceived by them." *Elkind v. Revlon Consumer Prod. Corp.*, 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015).

Here, plaintiffs allege that they "are no longer able to rely on defendant's representations, regardless of whether the representations are true or false." FAC ¶ 122; *see also id.* ¶ 40.[7] Further, each plaintiff alleges that she "would not have paid [for the Junior Mints] had she known that the box was more than one third full of air or had the box been proportioned to its actual contents." *Id.* ¶ 38; *see also id.* ¶¶ 44, 47. Plaintiffs thus allege that they will not purchase Junior Mints again—and if they do, they certainly will not be surprised by the level of fill in (or deceived by) the boxes. These allegations clearly establish that plaintiffs are *not* subject to any real or immediate threat of future injury—and therefore lack standing to seek injunctive relief. *Elkind*, 2015 WL 2344134, at *3; *see also Kommer*, 2018 WL 627498, at *1 (plaintiff "has not shown that he is likely to be subjected to further injurious sales" of an accused product where he "concedes . . . that he knows of Defendants' alleged deception and false advertising") (internal marks omitted). That

---

[7] The new New York and Mississippi plaintiffs allege that they are "willing to purchase the Products in the future and plan[] to purchase them in the near future, however, [they are] concerned that [they] cannot rely on the truthfulness of the packaging." FAC ¶¶ 44, 48. But these allegations are irreconcilable with these plaintiffs' concurrent allegations that they would not have bought the Junior Mints boxes had they known the boxes were "less than half full" or "more than one third air." *Id.* ¶¶ 44, 47. Even if these plaintiffs actually plan to purchase these boxes in the future, they cannot possibly be misled—*i.e.*, harmed—by the packaging, since they now know exactly how much slack-fill is in the boxes. *See Elkind*, 2015 WL 2344134, at *3.

is exactly what Judge McMahon concluded, addressing nearly identical allegations presented by plaintiffs' counsel here in *Izquierdo*. *See* 2016 WL 6459832, at *5.

Plaintiffs contend they are at risk of future injury because they may be deceived into purchasing a *different* "slack-filled Tootsie Roll® Product again." FAC ¶ 121. But the prospect of suffering such speculative future harm from the purchase of *other* Tootsie Roll products cannot establish a likelihood of future harm with respect to the only products plaintiffs actually purchased (and have standing to challenge in this lawsuit)—the 3.5 and 4.13 oz. Junior Mints boxes. *See infra* Part II.C.2. As to those products, plaintiffs affirmatively allege that they "are no longer able to rely on defendant's representations"; they therefore will not suffer future injury, and thus lack standing. FAC ¶ 122. Moreover, plaintiffs allege that certain other Tootsie Roll products are under-filled too, *id.* ¶¶ 57, 60, so plaintiffs likewise cannot be deceived as to such other products.

Finally, plaintiffs contend that they might be injured by future non-purchases because they:

> might hesitate to purchase Defendant's products even if it ceases its unlawful labeling practices and begins packaging its products without slack-fill. If the products are no longer sold with non-functional slack-fill, then Plaintiffs could not take advantage of those products because they have been misled into believing that the products have non-functional slack-fill[.]

*Id*. ¶ 122. In support of this theory, plaintiffs cite a recent Ninth Circuit decision, *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103 (9th Cir. 2017). *See* FAC ¶ 123 (urging this Court to "follow the lead of California Federal Courts"). However, plaintiffs do not allege, as in *Davidson*, that they will not purchase Junior Mints in the future "although [they] would like to," or that they might purchase Junior Mints in the future because they may incorrectly "assume the product was improved." *Davidson*, 873 F.3d at 1115. More to the point, *Davidson* cannot be reconciled with controlling Supreme Court and Second Circuit law, which requires a plaintiff to plead a likelihood of future injury. *See Izquierdo*, 2016 WL 6459832, at *5 (declining plaintiff's invitation to "adopt the view that a consumer may have standing to seek injunctive relief even though he/she is not

21

likely to repurchase a product") (internal marks omitted).  The "weight of authority in this Circuit directs" that where a plaintiff is not likely to repurchase a product or could not be misled by the product in the future, she cannot establish standing to sue for injunctive relief.  *Kommer*, 252 F. Supp. 3d at 310, *aff'd*, 2018 WL 627498, at *1; *see also Elkind*, 2015 WL 2344134, at *3.  Unlike *Davidson*, *see* 873 F.3d at 115-16, this controlling authority is faithful to the Supreme Court's explicit direction *not* to read public policy exceptions into constitutional standing requirements.[8]

Given the lack of any plausible allegation that plaintiffs will imminently suffer harm from an additional Junior Mints purchase, they lack standing to seek injunctive relief.

### 2.      Plaintiffs lack standing to sue for products they did not purchase.

This Court should also dismiss plaintiffs' claims against any Junior Mints boxes they did not purchase for lack of standing.  "For each claim asserted in a class action, there must be at least one class representative (a named plaintiff or a lead plaintiff) with standing to assert that claim." *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 331 (S.D.N.Y. 2012).  "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured." *Lewis v. Casey*, 518 U.S. 343, 357 (1996).

Applying these principles, courts in this Circuit have granted motions to dismiss plaintiffs' claims against products they did not purchase.  For example, in *DiMuro v. Clinique Laboratories, LLC*, plaintiffs asserted class action claims "arising from Defendants' marketing of seven different cosmetic products sold under the 'Repairwear' product line," despite having only purchased three of them.  572 Fed. App'x 27, 29-30 (2d Cir. 2014).  The Second Circuit affirmed the district court's

---

[8] *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1154 (2013) (an "assumption that if [a plaintiff] has no standing to sue, no one would have standing, is not a reason to find standing"); *In re Avon Anti-Aging Skincare Creams & Prod. Mktg. & Sales Practices Litig.*, 2015 WL 5730022, at *8 (S.D.N.Y. Sept. 30, 2015) ("Article III does not permit this sort of public policy exception."); *see also Kommer*, 252 F. Supp. 3d at 310, *aff'd*, 2018 WL 627498, at *1; *Anderson v. The Hain Celestial Grp., Inc.*, 87 F. Supp. 3d 1226, 1234 (N.D. Cal. 2015).

holding that plaintiffs lacked standing to assert claims regarding the four products they had not purchased, in part because defendants had made different advertising claims for each; thus, unique evidence would be required to prove that the different advertising statements made for those products were false and misleading. *See id.* at 29; *see also, e.g.*, *Hart v. BHH, LLC*, 2016 WL 2642228, at *4 (S.D.N.Y. May 5, 2016) (no standing to assert claims for additional products because "unique evidence would be required to prove that Defendants' statements regarding both products were actually false or misleading"); *Cowen v. Lenny & Larry's, Inc.*, 2017 WL 4572201, at *2-*3 (N.D. Ill. Oct. 12, 2017) (dismissing plaintiffs' claim concerning cookies in sizes and varieties that plaintiffs did not purchase); *cf. Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 317 F.R.D. 374, 391 (S.D.N.Y. 2016) (where plaintiffs could not "demonstrate that the claims involving their 18 products are the same in all essential respects to the claims absent members would have for the other 72 products (the questions of proof are product specific), each Named Plaintiff only has standing on behalf of others with regard to products they actually purchased").

Here, too, unique evidence will be required to prove whether each particular size-box of Junior Mints purportedly challenged in the FAC is likely to deceive a reasonable consumer: whether one box size, filled to a particular level and sold in a certain way, is deceptive does not necessarily show that another box size, filled to a different level and sold in a different way, is also deceptive.   In addition, evidence tending to show that the slack-fill in a particular box is nonfunctional will not necessarily answer the question of whether a different amount of slack-fill in a different box—of different dimensions, with a different amount of candy, packaged in a different manner, and subject to different product settling—is also nonfunctional.

Plaintiffs here do not challenge the quality of the Junior Mints candies, which are the same box-to-box.   Rather, plaintiffs challenge the packaging, which dimensions and fill vary box-to-box, as the allegations show.  *See* FAC ¶¶ 57-60.  Thus, the differing evidence required box-by-

23

box goes to the heart of plaintiffs' claims.  For these reasons, plaintiffs, who only bought the 3.5 oz. and 4.13 oz. boxes, lack standing to challenge the amount of slack-fill in any other size-box. Their purported claims against any other such boxes should accordingly be dismissed.

### D.     Plaintiff's Nationwide Class Claims Should Be Dismissed or Stricken.

In the event the FAC is not dismissed in its entirety, plaintiffs' nationwide class claims should be dismissed for lack of personal jurisdiction, lack of standing, or failure to state a claim, or should be stricken under Rule 12(f).

### 1.     This Court lacks personal jurisdiction over the claims of any plaintiff or class member who purchased Junior Mints outside New York.

The Supreme Court recognizes two types of personal jurisdiction, general and specific. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  A court with general jurisdiction may hear any claim against a defendant, even if all of the incidents underlying the claim occurred in a different state.  *See Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780.  General jurisdiction, however, exists only when a defendant's contacts with a state "are so continuous and systematic as to render it essentially at home in the forum State."  *Daimler*, 134 S. Ct. at 761 (internal marks omitted).  Only "in an exceptional case" will a corporation be at home in a forum other than its (1) formal place of incorporation or (2) principal place of business.  *Id.* at 761 n.19.

Specific jurisdiction, by contrast, "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."  *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780 (quoting *Goodyear*, 564 U.S. at 919).  Thus, specific jurisdiction is warranted only when a claim "arises out of or relates to the defendant's contact with the forum."  *Daimler*, 134 S. Ct. at 755 (internal marks omitted).  "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."  *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781.

The Supreme Court's *Bristol-Myers Squibb* decision establishes that there is no personal jurisdiction here over claims involving any Junior Mints purchase outside of New York. In *Bristol-Myers Squibb*, a group of plaintiffs—86 California residents and 592 non-California residents—brought suit in California against Bristol-Myers Squibb ("BMS"), which is incorporated in Delaware and headquartered in New York. *Id.* at 1777-78. The plaintiffs alleged injuries caused by a defective pharmaceutical drug but the non-California plaintiffs did not allege that they obtained or were injured by the drug *in California*. *Id.* at 1778. The Supreme Court recognized that there was no basis to assert general jurisdiction, *id.* at 1783, and held that specific jurisdiction over the nonresident plaintiffs' claims was lacking because "[t]he mere fact that *other* plaintiffs were prescribed, obtained, and ingested [the drug] in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* at 1781. "This remains true even when third parties (here, the plaintiffs who reside in California) can bring claims similar to those brought by the nonresidents." *Id.*

Here, too, this Court lacks personal jurisdiction over the claims of any plaintiff or class member who purchased the challenged Junior Mints boxes in states other than New York. The FAC essentially concedes that this Court lacks general jurisdiction over Tootsie Roll, affirmatively alleging that its state of incorporation and the location of its principal place of business—the "paradigm all-purpose forums"—is Illinois. *Daimler*, 134 S. Ct. at 760; *see* FAC ¶ 49. Otherwise, plaintiffs simply allege that Tootsie Roll "conducts substantial business in this District" and that "*[s]ome* of the actions giving rise to the Complaint took place in this District." FAC ¶ 35 (emphasis added). Even accepting these allegations as true, they cannot as a matter of law support specific jurisdiction under *Bristol-Myers Squibb* over the claims of purchasers who bought the challenged Junior Mints products outside of New York (including plaintiff Perkins), because such claims do not arise out of or relate to Tootsie Roll's alleged contacts *with New York*. *Daimler*, 134

S. Ct. at 755.  For these reasons, plaintiffs' nationwide class claims (and the alternative Mississippi class claims) should be dismissed for lack of personal jurisdiction.  *See, e.g.*, *Famular v. Whirlpool Corp.*, 2017 WL 2470844, at *6-*7 (S.D.N.Y. June 7, 2017).

　　　　2.　　**New York law applies only to plaintiffs and transactions in New York.**

Plaintiffs' nationwide class claims also should be dismissed because New York law does not apply to the claims of a nationwide class.  New York's choice-of-law rules require application of the substantive law of the state in which the consumer resides and the allegedly fraudulent sales took place.  *See Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 89 Fed. App'x 287, 288 (2d Cir. 2004); *Mendy v. JP Morgan Chase & Co.*, 2014 WL 1224549, at *7 (S.D.N.Y. Mar. 24, 2014); *see also In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002) ("State consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules.").  In particular, GBL sections 349 and 350 by their terms apply only to conduct occurring "in this state."  *See Szymczak v. Nissan N. Am., Inc.*, 2011 WL 7095432, at *12 (S.D.N.Y. Dec. 16, 2011) (GBL §§ 349 and 350 "do not apply to transactions occurring outside the state").

Here, plaintiffs do not allege (and there is no reason to believe) that nationwide class members purchased Junior Mints anywhere other than their home states.  Thus, purchasers in different jurisdictions have claims, if at all, under different state laws, and a nationwide class action under New York law cannot be maintained.  *See Szymczak*, 2011 WL 7095432, at *12-*13 (dismissing plaintiffs' GBL §§ 349 and 350 claims as to plaintiffs in putative class action who did not purchase vehicles in New York); *Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*, 211 F.R.D. 228, 236 (S.D.N.Y. 2002) (holding that "a uniform substantive law of fraud cannot be applied to the claims of this purported nationwide class"); *see also Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314,

324, 326 (2002) (dismissing Florida and other out-of-state plaintiffs' GBL § 349 claims in putative class action because statute applies only to transactions and deception that occur in New York).

### 3.   Plaintiffs lack standing to assert claims under the laws of other states.

Anticipating this result, plaintiffs purport to bring their claims "in conjunction with the substantively similar common law of other states and the District of Columbia to the extent New York common law is inapplicable to out-of-state Class members."  FAC ¶¶ 113, 126, 134, 154 (headings); *see id.* ¶ 30.  However, "named plaintiffs lack standing to bring claims on behalf of a class under the laws of states where the named plaintiffs have never lived or resided."  *In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 50 (E.D.N.Y. 2014) (collecting cases); *see Jurgensen v. Felix Storch, Inc.*, 2012 WL 2354247, at *10 (S.D.N.Y. June 14, 2012) ("plaintiff does not have standing to bring claims for violations of consumer fraud statutes of states other than . . . the state where she resides").  "[S]ince a plaintiff must demonstrate standing for each claim she seeks to press, each state law claim must be accompanied by a named plaintiff who has suffered an injury under that state's statute."  *In re Propranolol Antitrust Litig.*, 249 F. Supp. 3d 712, 727 (S.D.N.Y. 2017) (internal citation and marks omitted).

Here, plaintiffs have no basis to allege injury under the consumer fraud laws of all 50 states and the District of Columbia.  Rather, if not otherwise infirm, they would have standing only to assert claims under the laws of New York and Mississippi.  Accordingly, their class claims under the laws of any other state should be dismissed for lack of standing.  *See In re HSBC BANK, USA, N.A.*, 1 F. Supp. 3d at 50 (dismissing claims asserted under state laws to which plaintiffs "have not been subjected" in putative class action); *see also In re Propranolol Antitrust Litig.*, 249 F. Supp. 3d at 727-28 (similar); *Mosely v. Vitalize Labs, LLC*, 2015 WL 5022635, at *8 (E.D.N.Y. Aug. 24, 2015) (similar); *Jurgensen*, 2012 WL 2354247, at *10 (similar).

### 4.      Material differences in the consumer protection and fraud laws of the 50 states and D.C. preclude a nationwide class.

Even if plaintiffs had standing to assert claims under the consumer protection and fraud laws of other states, material differences in those laws preclude a nationwide class here.

As a threshold matter, the consumer protection laws of many states—including Mississippi—entirely bar plaintiffs from asserting claims on a class basis.  *See* Miss. Code Ann. § 75-24-15(4); *see also* Ala. Code § 8-19-10(f); Ga. Code Ann. § 10-1-399(a); S.C. Code Ann. § 39-5-140(a); Tenn. Code Ann. § 47-18-109(g).  Others provide for no private cause of action at all.  *See, e.g.*, *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 228 (Iowa 1998).  Accordingly, the consumer protection claims of Junior Mints purchasers in such states cannot be included in any nationwide class action.  *See, e.g.*, *Delgado v. Ocwen Loan Servicing, LLC*, 2017 WL 5201079, at *10 (E.D.N.Y. Nov. 9, 2017) (excluding consumers from states where there is no state-law right to bring class action); *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 84-85 (D. Mass. 2005) (similar); *see also Cole v. Chevron USA, Inc.*, 554 F. Supp. 2d 655, 671 (S.D. Miss. 2007) (striking class claims due to MCPA class action bar).

Material differences in the fraud and consumer protection laws of the remaining states would also preclude plaintiffs from asserting claims on behalf of a multi-state class.  As noted above, New York's choice-of-law rules require application of the substantive law of the state in which the consumer resides and the allegedly fraudulent sales took place.  *See supra* Part II.D.2. However, the "elements of fraud vary greatly from state to state, with respect to elements including mitigation, causation, damages, reliance, and the duty to disclose."  *Lewis Tree Serv., Inc.*, 211 F.R.D. at 236.  Because the "substantive law of over fifty states would have to be applied to the claims of class members" in a putative nationwide class, "class certification for fraud claims is inappropriate."  *Id.*; *see also In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 71 (S.D.N.Y. 2002)

(citing *In re Bridgestone/Firestone, Inc.*, 288 F.3d at 1018); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 742 n.15 (5th Cir. 1996).[9]

Variation in the consumer protection laws of the 50 states and District of Columbia also makes plaintiffs' consumer protection claims inappropriate for nationwide class treatment.  For example, some states' consumer protection laws require proof of intent to deceive,[10] while others do not.[11]  Still others require only a showing that the defendant intended to induce reliance,[12] while others require a showing that the defendant knew its conduct was deceptive.[13]

The states also follow non-common rules as to deception.  Some states focus on the potential effect on a "reasonable consumer."[14]  Others measure deceptive actions by their potential effect on the least sophisticated consumer.[15]  Still others have adopted their own unique approaches for evaluating deceptiveness.[16]  These differences prevent plaintiffs from pursuing consumer protection claims on behalf of a nationwide class.  *See, e.g.*, *In re Hyundai & Kia Fuel Econ. Litig.*,

---

[9] These cases were decided on motions for class certification or decertification, but a defendant may properly move to strike nationwide class allegations prior to discovery where "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met."  *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 205 n.3 (D.N.J. 2003); *see also Semenko v. Wendy's Int'l, Inc.*, 2013 WL 1568407, at *11 (W.D. Pa. Apr. 12, 2013) (granting motion to strike class claims); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) (same).

[10] *See, e.g.*, *Padin v. Oyster Point Dodge*, 397 F. Supp. 2d 712, 722 (E.D. Va. 2005); *Porras v. Bell*, 857 P.2d 676, 678 (Kan. App. 1993); *Colonial Lincoln-Mercury Sales, Inc. v. Molina*, 262 S.E.2d 820, 823-24 (Ga. App. 1979); *Knapp v. Potamkin Motors Corp.*, 602 A.2d 302, 304 (N.J. Super. Ct. 1991); Utah Code Ann. § 13-11-4(2).

[11] *See, e.g.*, *Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc.*, 764 F.2d 928, 937 n.6 (1st Cir. 1985) (Massachusetts law); *State v. Bob Chambers Ford, Inc.*, 522 A.2d 362, 365 (Me. 1987); *Williams v. Trail Dust Steak House, Inc.*, 727 S.W.2d 812, 814 (Tex. App. 1987).

[12] *See, e.g.*, *Siegel v. Levy Org. Dev. Co.*, 607 N.E.2d 194, 198 (Ill. 1992) (Illinois law).

[13] *See* Ark. Code Ann. § 4-88-107(a)(1); Colo. Rev. Stat. Ann § 6-1-105(1)(e); Idaho Code Ann. § 48-603; Nev. Rev. Stat. Ann. § 598.0915; N.M. Stat. Ann. § 57-12-2(D); Okla. Stat. Ann. tit. 78, § 53; S.D. Codified Laws § 37-24-6; Wyo. Stat. Ann. § 40-12-105(a)(iii).

[14] *See, e.g.*, *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).

[15] *See, e.g.*, *Aurigemma v. Arco Petroleum Prods. Co.*, 734 F. Supp. 1025, 1029 (D. Conn. 1990) (Connecticut law); *RRTM Restaurant Corp. v. Keeping*, 766 S.W.2d 804, 808 (Tex. App. 1988) (Texas law).

[16] *See, e.g.*, *Ford Motor v. Majors*, 2005 WL 1021551, at *4 (Minn. Ct. App. 2005); *State ex rel. Celebrezze v. Ferraro*, 578 N.E.2d 492, 494 (Ohio App. 1989).

2018 WL 505343, at *3 (9th Cir. Jan. 23, 2018); *Hughes v. The Ester C Co.*, 317 F.R.D. 333, 352-53 (E.D.N.Y. 2016); *In re Zyprexa Prod. Liab. Litig.*, 2008 WL 2696916, at *2, *137-*138 (E.D.N.Y. July 2, 2008).[17]

Finally, a nationwide class action would conflict with pending state-wide class actions concerning Junior Mints in Missouri and California, in which cases the plaintiffs have recognized the necessity of separate state cases under separate state laws. A nationwide class here could easily result in conflicting decisions with those arising in the prior-pending state actions, and would be logistically problematic.

## Conclusion

For the foregoing reasons, this Court should grant Tootsie Roll's motion to dismiss the FAC with prejudice, or alternatively should dismiss or strike plaintiffs' nationwide class claims.

Dated: New York, New York  
      February 16, 2018

COVINGTON & BURLING LLP

By: s/ *David W. Haller*　　　　　  
     David W. Haller

The New York Times Building  
620 Eighth Avenue  
New York, New York 10018-1405  
Telephone: (212) 841-1000  
Email: dhaller@cov.com

*Attorneys for Tootsie Roll Industries, LLC*

---

[17] *See also Castano*, 84 F.3d at 742 n.15 (decertifying nationwide class; "it [is] difficult to fathom how common issues could predominate in this case when variations in state law are thoroughly considered"); *Thompson v. Jiffy Lube Int'l Inc.*, 250 F.R.D. 607, 625-26 (D. Kan. 2008) (similar); *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 229 (S.D. Fla. 2002) (similar); *Harding v. Tambrands, Inc.*, 165 F.R.D. 623, 632 (D. Kan. 1996) (similar).