UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
BIOLA DANIEL, ABEL DURAN, and
TREKEELA PERKINS, on behalf of
themselves and all others similarly
situated,

                                      **MEMORANDUM AND ORDER**

                Plaintiffs,

                                         17 Civ. 7541 (NRB)

        -against -

TOOTSIE ROLL INDUSTRIES, LLC,

                Defendant.
-----------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

      Plaintiffs Biola Daniel ("Daniel"), Abel Duran ("Duran"), and Trekeela Perkins ("Perkins"), on behalf of themselves and all others similarly situated, bring this action against defendant Tootsie Roll Industries, LLC ("defendant"), asserting violations of the Federal Food Drug & Cosmetic Act, the New York General Business Law, and the Mississippi Consumer Protection Act. Plaintiffs allege that defendant's opaque boxes of Junior Mints candies contain "non-functional slack-fill," essentially wasted, empty air, which mislead consumers as to the amount of product contained therein. Defendant now moves, pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), 12(b)(2), 12(b)(6), and 12(f), to dismiss plaintiffs' First Amended Class Action Complaint, and/or to strike plaintiffs' class claims.

For the following reasons, defendant's motion to dismiss is granted, and its motion to strike is denied as moot.

**BACKGROUND**

## I.  Factual Background

Based in Chicago, Illinois, defendant "manufacture[s], package[s], distribute[s], advertise[s], market[s] and s[e]l[ls]" Junior Mints, a 0.5" wide "ovoid chocolate coated mint cand[y]," to "millions of consumers nationwide." First Amended Class Action Complaint ("Am. Compl.") ¶¶ 20, 49, Jan. 2, 2018, Dkt. No. 12.

On September 23, 2016, Daniel, a New York City resident, purchased a 3.5 oz. box of Junior Mints for $1.49 from a Duane Reade location in Manhattan. Id. ¶ 37. On December 28, 2017, Duran, who also resides in New York City, purchased a 4.13 oz. box of Junior Mints for $4.49 at an AMC Theatre location in Garden City, New York.[1] Id. ¶ 43. Perkins, who resides in Jackson County, Mississippi, purchased "boxes" of Junior Mints, "including the 3.5 oz. size," "on several occasions at Walmart and grocery stores" for about $1.00 to $1.29. Id. ¶ 46. In addition to the varieties of Junior Mints plaintiffs purchased, defendant also produces 1.84 oz. and 10.5 oz. boxes, along with "other Junior Mints product[s] that [are] packaged in a box with

---

[1] It has not gone unnoticed that Duran purchased the allegedly offending box of Junior Mints only five days before plaintiffs' counsel filed the operative First Amended Class Action Complaint.

more than one quarter of the box containing air," (collectively, the "Products"). Id. ¶ 1.

All of the Products, which are "mass produced and packaged in non-transparent boxes of standardized sizes," contain a certain amount of empty air or "slack-fill." Id. ¶ 2. The 1.84 oz. box is 1.88" wide and 0.75" long, with 3" out of its 4.75" vertical capacity filled with candy, meaning 37% is slack-fill; the 3.5 oz. box is 3.25" wide and 0.75" long, with 3.125" out of its 5.5" vertical capacity filled with candy, meaning 43% is slack-fill; the 4.13 oz. box is 3.25" wide and 0.75" long, with 3.5625" out of its 5.5" vertical capacity filled with candy, meaning 35% is slack-fill; and the 10.5 oz. box is 4.5" wide and 1" long, with 4.25" out of its 7" vertical capacity filled with candy, meaning 39% is slack-fill. Id. ¶¶ 5-8, 57-60.

According to plaintiffs, the size of the Product boxes in comparison to the volume of candy contained therein makes it appear that consumers are buying more than what is actually being sold, thereby denying them the benefit of their bargain. See id. ¶¶ 2, 4. In other words, consumers receive fewer candies than defendant represents that they are getting, such that consumers pay more money for each quantity of candy than had been bargained for. See id. ¶¶ 10-11. Plaintiffs allegedly "paid . . . for the Product[s] on the reasonable assumption that [the] box was filled to functional capacity . . . and would not

have paid this sum had [they] known that the box was more than one third full of air or had the box been proportioned to its actual contents." Id. ¶ 38; see id. ¶¶ 44, 47.

## II.  Procedural Background

Plaintiffs filed the operative First Amended Class Action Complaint on January 2, 2018.   Plaintiffs allege, on behalf of a putative nationwide class[2] and certain subclasses in the alternative,[3] that defendant "manufactures, markets and sells the Products with non-functional slack-fill" in violation of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq.  Am. Compl. ¶ 9.  However, as the FDCA does not provide a private right of action, plaintiffs bring claims pursuant to New York's prohibition on (1) deceptive and unfair trade practices, N.Y. Gen. Bus. Law § 349 ("GBL § 349"), and (2) false advertising, id. §§ 350, 350-a ("GBL §§ 350, 350-a"), see Am. Compl. ¶¶ 126-43, as well as (3) the Mississippi Consumer Protection Act ("MPCA"), Miss. Code Ann. § 75-24-1 et seq., see Am. Compl. ¶¶ 144-53.  Plaintiffs also assert a common law fraud claim.  See id. ¶¶ 154-60.

---

[2] Plaintiffs define the nationwide class they seek to represent as consisting of "[a]ll persons or entities in the United States who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate."  Am. Compl. ¶ 99.

[3] Plaintiffs outline two subclasses in the alternative: (1) "[a]ll persons or entities in New York who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate;" and (2) "[a]ll persons or entities in Mississippi who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate."  Id.

On February 16, 2018, defendant moved to dismiss the First Amended Class Action Complaint. See Dkt. No. 18. Defendant argues that: (1) plaintiffs do not have standing with respect to claims under laws of states in which they did not reside, the Products they did not purchase, and/or to the extent they seek injunctive relief; (2) this Court may not exercise personal jurisdiction with respect to Perkins' claims; (3) plaintiffs have not plausibly pleaded that the slack-fill in the Products is "non-functional," in violation of the FDCA; (4) no reasonable consumer would be misled by the Products; (5) plaintiffs have not alleged an injury under GBL §§ 349, 350, and/or 350-a; (6) plaintiffs' fraud claims fail under Rule 9(b); and (7) plaintiffs' class claims should be dismissed or stricken. We proceed to consider each argument *seriatim* and ultimately grant defendant's motion to dismiss and deny its motion to strike as moot. Before doing so, however, we first review the applicable federal and state regulatory schemes governing food product labeling.

**DISCUSSION**

I. **Federal and State Regulatory Schemes**

   a. **Federal Regulatory Scheme**

By enacting the FDCA, Congress established the Federal Food and Drug Administration ("FDA") to "promote the public health" by "ensuring that . . . foods are safe, wholesome,

sanitary, and properly labeled." 21 U.S.C. § 393(b). The FDA enforces the FDCA and the accompanying regulations it promulgates; there is no private right of action under the FDCA. PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1113 (2d Cir. 1997).

Congress amended the FDCA by enacting the Nutrition Labeling and Education Act of 1990 ("NLEA"), which "sought 'to clarify and to strengthen the [FDA's] legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods.'" N.Y. State Rest. Ass'n v. N.Y.C. Bd. of Health, 556 F.3d 114, 118 (2d Cir. 2009) (quoting H.R. Rep. No. 101-538, at 7 (1990), reprinted in 1990 U.S.C.C.A.N. 3336, 3337). Among other requirements, the NLEA provides that "[a] food shall be deemed to be misbranded" if "its container is so made, formed, or filled as to be misleading." 21 U.S.C. § 343(d).

One category of misleading products are those that contain "slack-fill," defined as "the difference between the actual capacity of a container and the volume of product contained therein." 21 C.F.R. § 100.100(a). Yet not all slack-fill is misleading; rather, slack-fill is only misleading if (1) consumers are unable to fully view the contents of the package, and (2) the slack-fill is non-functional. See id. Slack-fill is, in turn, non-functional only if none of the following

*raisons d'être* apply: (1) protection of the contents of the package; (2) requirements of the machines used to enclose the contents in the package; (3) unavoidable settling during shipping and handling; (4) the need for the package to perform a specific function; (5) the food is packaged in a reusable container with empty space as part of the presentation of the food; and/or (6) the inability to increase the fill level or reduce the package size because, for example, the size is necessary to accommodate food labeling requirements or to discourage theft. See id. § 100.100(a)(1)-(6).

### b. State Regulatory Schemes

New York law provides that "[f]ood shall be deemed to be misbranded . . . [i]f its container is so made, formed, colored or filled as to be misleading." N.Y. Agric. & Mkts. Law § 201(4). "Like its federal counterpart, New York law also provides remedies, including private rights of action, for misbranding food under consumer protection laws." Izquierdo v. Mondelez Int'l, Inc., No. 16-cv-04697 (CM), 2016 WL 6459832, at *3 (S.D.N.Y. Oct. 10, 2016). GBL Sections 349, 350 and 350-a in particular have been interpreted to provide a private right of action for excessive slack-fill. See Mennen Co. v. Gillette Co., 565 F. Supp. 648, 655 (S.D.N.Y. 1983), aff'd sub nom. Mennen v. Gillette, 742 F.2d 1437 (Table) (2d Cir. 1984); see

also <u>Waldman v. New Chapter, Inc.</u>, 714 F. Supp. 2d 398, 406 (E.D.N.Y. 2010).

Mississippi law, and specifically the MCPA, prohibits "unfair or deceptive trade practices in or affecting commerce." Miss. Code Ann. § 75-24-5(1); <u>see</u> <u>Holman v. Howard Wilson Chrysler Jeep, Inc.</u>, 972 So.2d 564, 571 (Miss. 2008) (The purpose of the MCPA "is to protect the citizens of Mississippi from deceptive and unfair trade practices."). The MCPA defines unfair or deceptive trade practices as, *inter alia*, "[r]epresenting that goods or services have . . . quantities that they do not have," and "[a]dvertising goods or services with the intent not to sell them as advertised." Miss. Code Ann. § 75-24-5(2)(e), (i).

In addition to enforcement rights reserved for the Attorney General of the State of Mississippi, the MCPA "creates a private right of action in favor of any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use of or employment by the seller, lessor, manufacturer or producer" of such unfair or deceptive trade practices. <u>Humphrey v. Citibank NA</u>, No. 2:12CV148M-V, 2013 WL 5407195, at *6 (N.D. Miss. Sept. 25, 2013) (internal quotation marks omitted) (quoting Miss. Code Ann. § 75-24-15(1)).

**c. Preemption**

"Consistent with the NLEA's purpose of promoting uniform national labeling standards, the statute includes an express preemption provision that forbids the states from 'directly or indirectly establish[ing] . . . any requirement . . . made in the labeling of food that is not identical to' the federal labeling requirements established by certain specifically enumerated sections of the FDCA." Izquierdo, 2016 WL 6459832, at *4 (quoting 21 U.S.C. § 343-1(a)). "The effect of the NLEA's preemption provision is to ensure that the states only enact food labeling requirements that are equivalent to, and consistent with, the federal food labeling requirements." Id. "State laws that impose affirmatively different labeling requirements from federal law in these areas are preempted." Id. However, "state laws that seek to impose labeling requirements identical to those required by federal regulations are not preempted." Id. (citing Koenig v. Boulder Brands, Inc., 995 F. Supp. 2d 274, 284 (S.D.N.Y. 2014)). The consequence is that if a product's packaging does not run afoul of federal law governing food labeling, no state law claim for consumer deception will lie. See Daniel v. Mondelez Int'l, Inc., 287 F. Supp. 3d 177, 187 n.7 (E.D.N.Y. 2018); cf. Martin v. Wm. Wrigley Jr. Co., No. 4:17-cv-00541-NKL, 2017 WL 4797530, at *2 (W.D. Mo. Oct. 24, 2017) ("[T]he Court must construe the [Missouri

Merchandising Practices Act] provisions governing Plaintiff's claims, which purport to concern misleading containers and slack-fill, as being no broader than corresponding federal law."); Bautista v. CytoSport, Inc., 223 F. Supp. 3d 182, 192 (S.D.N.Y. 2016); Izquierdo, 2016 WL 6459832, at *4.

## II. Subject Matter Jurisdiction: Article III Standing

Defendant first moves under Federal Rule of Civil Procedure 12(b)(1) to dismiss the First Amended Class Action Complaint for lack of subject matter jurisdiction, namely, plaintiffs' purported failure to establish Article III standing.

To defeat a Rule 12(b)(1) motion, a plaintiff must establish subject matter jurisdiction by a preponderance of the evidence. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In considering such a motion, the Court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor. Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009). Nevertheless, "even on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." Id. (internal quotation marks omitted) (quoting Sharkey v. Quarantillo, 541 F.3d 75, 83 (2d Cir. 2008)).

Defendant raises three different standing arguments: (1) that plaintiffs lack standing to bring claims on behalf of a class under the laws of states where the named plaintiffs have

never lived or resided; (2) that plaintiffs were not injured, and thus do not have standing, with respect to the Products they did not personally purchase; and (3) that Daniel and Duran, who seek injunctive relief under GBL § 349, have not demonstrated that defendant's allegedly misleading packaging is likely to injure them in the future.

In order to bring a suit in federal court, a plaintiff must demonstrate that he possesses standing to do so. Under well settled Supreme Court precedent, in order to demonstrate standing, a plaintiff must show three elements: (1) an injury in fact, (2) that is fairly traceable to the defendant's allegedly unlawful conduct, and (3) that is likely to be redressed by a favorable judicial decision. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). The "injury in fact" must be a "concrete and particularized" harm to a "legally protected interest" that is "actual or imminent not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal quotation marks omitted). A "particularized" injury is one that "affect[s] the plaintiff in a personal and individual way." Id. at 560 n.1.

"That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured." Lewis v. Casey, 518 U.S. 343, 357 (1996)

(internal quotation marks omitted) (quoting <u>Simon v. E. Ky.</u> <u>Welfare Rights Org.</u>, 426 U.S. 26, 40 n.20 (1976)). Thus, "[f]or each claim asserted in a class action, there must be at least one class representative . . . with standing to assert that claim." <u>Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.</u>, 862 F. Supp. 2d 322, 331-32 (S.D.N.Y. 2012) (citing <u>Cent. States</u> <u>Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed</u> <u>Care, L.L.C.</u>, 504 F.3d 229, 241 (2d Cir. 2007)).

### a. Standing for Class Claims Under Other States' Laws

Plaintiffs purport to bring their claims "in conjunction with the substantively similar common law of other states and the District of Columbia to the extent New York common law is inapplicable to out-of-state Class members." Am. Compl. at 43, 46, 47, 51. Defendant, pointing to several district court cases within this Circuit, argues that "named plaintiffs lack standing to bring claims on behalf of a class under the laws of states where the named plaintiffs have never lived or resided." Def.'s Supp. at 27 (citing <u>In re HSBC BANK, USA, N.A., Debit Card</u> <u>Overdraft Fee Litig.</u>, 1 F. Supp. 3d 34, 50 (E.D.N.Y. 2014)). Thus, defendant contends that Daniel and Duran would only have Article III standing to assert claims under New York law, and Perkins under Mississippi law.

After this motion had been fully briefed, the Second Circuit decided <u>Langan v. Johnson & Johnson Consumer Cos.</u>, No.

17-1605, 2018 WL 3542624 (2d Cir. July 24, 2018). Contrary to
defendant's position in this case, Langan explained that "as
long as the named plaintiffs have standing to sue the named
defendants, any concern about whether it is proper for a class
to include out-of-state, nonparty class members with claims
subject to different state laws is a question of predominance
under [Federal Rule of Civil Procedure] 23(b)(3)," and "not a
question of 'adjudicatory competence' under Article III."  Id.
at *3 (citing Morrison v. YTB Int'l, Inc., 649 F.3d 533, 536
(7th Cir. 2011)).

        Accordingly,  defendant's  motion  with  respect  to
plaintiff's ability to assert Article III standing on behalf of
"nonparty class members with claims subject to different state
laws" is denied.

### b. Standing for Unpurchased Products

        Daniel, Duran, and Perkins, who seek to lead a putative
class of purchasers of all of the Products, are alleged to have
purchased, and thus been injured by, only some of the Products,
*viz.*, the 3.5 oz. box (Daniel), the 4.13 oz. box (Duran), and
"boxes . . . including the 3.5 oz. size" (Perkins).  Am. Compl.
¶¶ 37, 43, 46.  According to defendant, plaintiffs lack standing
with respect to the Products they did not purchase, *viz.*, the
1.84 oz. box, the 10.5 oz. box, and "[a]ny other Junior Mints

13

[P]roduct that is packaged in a box with more than one quarter of the box containing air."

"[C]ourts in this Circuit have held that, subject to further inquiry at the class certification stage, a named plaintiff has standing to bring class action claims under state consumer protection laws for products that he did not purchase, so long as those products, and the false or deceptive manner in which they were marketed, are 'sufficiently similar' to the products that the named plaintiff did purchase." Mosley v. Vitalize Labs, LLC, Nos. 13 CV 2470(RJD)(RLM), 14 CV 4474(RJD)(RLM), 2015 WL 5022635, at *7 (E.D.N.Y. Aug. 24, 2015); see Bautista, 223 F. Supp. 3d at 188-89; Kacocha v. Nestle Purina Petcare Co., No. 15-CV-5489 (KMK), 2016 WL 4367991, at *9-10 (S.D.N.Y. Aug. 12, 2016); Quinn v. Walgreen Co., 958 F. Supp. 2d 533, 541-42 (S.D.N.Y. 2013).

Here, the purchased and unpurchased Products are sufficiently similar for plaintiffs to satisfy standing at the motion to dismiss stage: all of the Products are (1) Junior Mints; (2) manufactured, packaged, distributed, advertised, marketed, and sold by defendant; (3) packaged in a non-transparent thin cardboard box; and (4) alleged to contain at least 25% slack fill. Am. Compl. ¶¶ 1-2, 5-8, 57-60; see Alce v. Wise Foods, Inc., No. 17 Civ. 2402 (NRB), 2018 WL 1737750, at *5 (S.D.N.Y. Mar. 27, 2018) (the purchased and unpurchased

products are all potato chips, produced by the same
manufacturer, within a 4.25 oz. range, and alleged to contain
between 58 and 75% slack-fill); Bautista, 223 F. Supp. 3d at
188 (plaintiff alleges that all of defendant's products are
packaged in "large, opaque containers that contain approximately
30% or more of empty space"); Buonasera v. Honest Co., 208 F.
Supp. 3d 555, 563 (S.D.N.Y. 2016) ("Although the unpurchased
products may contain different ingredients compared to the
purchased products . . . the Amended Complaint adequately
alleges that the misrepresentation claimed with respect to the
unpurchased products is sufficiently similar to the
misrepresentation for the purchased products."); Jovel v. i-
Health, Inc., No. 12-CV-5614 (JG), 2013 WL 5437065, at *10
(E.D.N.Y. Sept. 27, 2013) (sufficient similarities in, *inter
alia*, packaging and labeling of products and unpurchased
products to survive motion to dismiss for lack of standing).

### c. Standing for Injunctive Relief

Daniel and Duran[4] seek to enjoin defendant from violating
GBL § 349 in the future by refraining from "packaging its
Product[s] with non-functional slack-fill." Am. Compl. ¶ 120.
Defendant argues that even if Daniel and Duran were injured by

---

[4] Technically, Daniel, Duran, and Perkins seek injunctive relief under
GBL § 349. However, GBL § 349 does not afford a cause of action to Perkins,
a Mississippian who is not alleged to have purchased any Products in New
York. See Szymczak v. Nissan N. Am., Inc., No. 10 CV 7493(VB), 2011 WL
7095432, at *12-13 (S.D.N.Y. Dec. 16, 2011); Weaver v. Chrysler Corp., 172
F.R.D. 96, 100 (S.D.N.Y. 1997).

overpaying for the Products that they purchased, there is no likelihood they will purchase additional Products, and thus be injured again, depriving them of standing to seek injunctive relief.

As with claims for damages, a plaintiff seeking an injunction "must show the three familiar elements of standing: injury in fact, causation, and redressability." Cacchillo v. Insmed, Inc., 638 F.3d 401, 404 (2d Cir. 2011) (citing Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009)). "Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 239 (2d Cir. 2016) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 111-12 (1983)). "The Supreme Court has repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient." Am. Civil Liberties Union v. Clapper, 785 F.3d 787, 800 (2d Cir. 2015) (alterations and internal quotation marks omitted).

Plaintiffs suggest that they are "at risk of several types of future injury, each of which justifies the imposition of an injunction." Am. Compl. ¶ 121. First, because defendant "has misleadingly manufactured many different sizes of [P]roducts with non-functional slack-fill," plaintiffs "may be deceived into purchasing a slack-filled . . . Product again (whether the

16

exact same size and flavor as before or not), causing the same type of economic injury" as they experienced from their prior purchases. Id. Second, plaintiffs are "no longer able to rely on Defendant's representations, regardless of whether the representations are true or false." Id. ¶ 122. Third, plaintiffs "might hesitate to purchase Defendant's Products, even if it ceases its unlawful labeling practices and begins packaging its Products without slack-fill." Id. "If the [P]roducts are no longer sold with non-functional slack-fill, then Plaintiffs could not take advantage of those [P]roducts because they have been misled into believing that the [P]roducts have non-functional slack-fill." Id.

These allegations are plainly insufficient to "establish a 'real or immediate threat' of injury." Nicosia, 834 F.3d at 239.

First, Daniel and Duran's professed intention to re-purchase Products as they are currently packaged is belied by their own allegations, namely, that they "paid . . . for the Product on the reasonable assumption that the box was filled to functional capacity" and "would not have paid this sum had [they] known that the box was more than one third full of air or had the box been proportioned to its actual contents." Am. Compl. ¶ 38 (emphasis added), see id. ¶ 44. Having learned that the Products contain slack-fill, there is no likelihood that

Daniel and Duran will subject themselves to future injury by re-purchasing defendant's allegedly deceptive Products.  See Davis v. Hain Celestial Grp., Inc., 297 F. Supp. 3d 327, 339 (E.D.N.Y. 2018) ("To the extent that plaintiff was deceived by defendants' products, he is now aware of the truth and will not be harmed again in the same way.  He therefore lacks standing to seek an injunction."); Alce, 2018 WL 1737750, at *6 ("Consumers who were misled by deceptive food labels lack standing for injunctive relief because there is no danger that they will be misled in the future."); Elkind v. Revlon Consumer Prods. Corp., No. 14-CV-2484(JS)(AKT), 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015); Tomasino v. Estee Lauder Cos., 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014).  We recognize that, as plaintiffs argue, plaintiffs are likely "the best conceivable" parties to assert injunctive standing, and that their inability to do so means no party may have standing to enjoin defendants' practices.  Yet the "assumption that if [plaintiffs] have no standing to sue, no one would have standing, is not a reason to find standing." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 420-21 (2013) (quoting Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 489 (1982)).

Daniel and Duran's proffered second and third injuries—that they will no longer be able to confidently rely on defendant's representations, and that they will refrain from

purchasing Products in the future even if they conform to their expectations—are also meritless.  The consequence of Daniel and Duran's inability to "confidently rely" on defendant's representations, and their intent to refrain from purchasing defendant's Products, is that <u>defendant</u> will be concretely injured through lost sales, not <u>plaintiffs</u>.

Further, "although non-pecuniary harm such as emotional distress is cognizable" under GBL § 349, the type of injury plaintiffs allege—annoyance at being unable to confidently purchase the Products—"does not appear to rise to the level of harms already recognized." <u>Daniel</u>, 287 F. Supp. 3d at 185-86; <u>cf.</u> <u>Bose v. Interclick, Inc.</u>, No. 10-CV-9183(DAB), 2011 WL 4343517, at *9 (S.D.N.Y. Aug. 17, 2011) (privacy violations); <u>Wood v. Capital One Servs., LLC</u>, 718 F. Supp. 2d 286, 292 (N.D.N.Y. 2010) (humiliation, anger, anxiety, emotional distress, fear, frustration, embarrassment); <u>Midland Funding, LLC v. Giraldo</u>, 961 N.Y.S.2d 743, 749 (Dist. Ct. 2013) (sleep deprivation, anxiety, nervousness, fear, worry, fright, shock, marital strain, humiliation, intimidation).

Accordingly, Daniel and Duran's claims for injunctive relief under GBL § 349 are dismissed for lack of subject matter jurisdiction.

### III. Personal Jurisdiction

Defendant next challenges this Court's exercise of personal jurisdiction with respect to Perkins' claims under Federal Rule of Civil Procedure 12(b)(2).

It is a plaintiff's burden to demonstrate that the district court has personal jurisdiction over the defendant. Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001). "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34-35 (2d Cir. 2010) (quoting Thomas v. Ashcroft, 470 F.3d 491, 495 (2d Cir. 2006)). Such a showing "entails making 'legally sufficient allegations of jurisdiction,' including 'an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant.'" Id. (alterations omitted) (quoting In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (per curiam)).

"The lawful exercise of personal jurisdiction by a federal court requires satisfaction of three primary requirements": (1) the defendant must have been properly served, (2) the court must have a statutory basis for exercising personal jurisdiction, and (3) the exercise of personal jurisdictional must comport with constitutional due process principles. Licci ex rel. Licci v.

Lebanese Canadian Bank, SAL, 673 F.3d 50, 59-60 (2d Cir. 2012).
"When the action is brought as a purported class action,
personal jurisdiction over each defendant is assessed with
respect to the named plaintiffs' causes of action." Famular v.
Whirlpool Corp., No. 16 CV 944 (VB), 2017 WL 2470844, at *2
(S.D.N.Y. June 7, 2017) (citing Beach v. Citigroup Alt. Invs.
LLC, No. 12 Civ. 7717(PKC), 2014 WL 904650, at *6 (S.D.N.Y. Mar.
7, 2014)). Defendant only challenges this Court's exercise of
personal jurisdiction with respect to Perkins' claims, and only
to the extent that such jurisdiction would not comport with
constitutional due process. Cf. Famular, 2017 WL 2470844, at
*3.

To establish personal jurisdiction over a defendant, due
process requires, *inter alia*, a plaintiff to allege "certain
minimum contacts" with the relevant forum, here New York. In re
Terrorist Attacks on September 11, 2011, 714 F.3d 659, 673 (2d
Cir. 2013) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310,
316 (1945)). "To determine whether a defendant has the
necessary 'minimum contacts,' a distinction is made between
'specific' and 'general' personal jurisdiction." Id. (citing
Metro. Life. Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567-
68 (2d Cir. 1996)).

Where it applies, the theory of general personal
jurisdiction permits suit in a given forum on "any and all

21

claims." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). "Aside from 'an exceptional case,'" a corporation is subject to general jurisdiction "only in a state that is [its] formal place of incorporation or its principal place of business." Gucci Am., Inc. v. Li, 768 F.3d 122, 135 (2d Cir. 2014) (quoting Daimler AG v. Bauman, 571 U.S. 117, 138 & n.19 (2014)). Defendant is a corporation whose formal place of incorporation and principal place of business is Illinois, not New York. As plaintiffs have offered no reason why this should be an "exceptional case," defendant is not subject to general personal jurisdiction in New York.

In contrast to general personal jurisdiction, specific personal jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy." Goodyear Dunlop Tires, 564 U.S. at 919 (internal quotation marks omitted). In particular, specific personal jurisdiction requires "the defendant's suit-related conduct [to have] create[d] a substantial connection with the forum." Walden v. Fiore, 571 U.S. 277, 284 (2014). A plaintiff asserting specific personal jurisdiction "must establish the court's jurisdiction with respect to each claim asserted." Charles Schwab Corp. v. Bank of Am. Corp., 883 F.3d 68, 83 (2d Cir. 2018) (quoting Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 24 (2d Cir. 2004)).

Unlike Daniel and Duran's claims, which arise out of their purchase of Products in the forum state of New York (in Manhattan and Garden City, respectively), there is no indication that the claims asserted by Perkins, who resides in Jackson County, Mississippi and purchased the Products "on several occasions at Walmart and grocery stores," have any connection to New York, substantial or otherwise. See Am. Compl. ¶¶ 37, 43, 46. Asserting specific personal jurisdiction over Perkins' claims is therefore unwarranted.

Plaintiffs imply, in the alternative, that this Court should exercise pendent personal jurisdiction over Perkins' claims. "Pendent jurisdiction traditionally refers to the joinder of a state-law claim by a party already presenting a federal question claim against the same defendant." Bayliss v. Marriott Corp., 843 F.2d 658, 663-64 (2d Cir. 1988). Plaintiffs cite no authority approving of the non-traditional application of pendent personal jurisdiction sought here, where a foreign defendant, subject to specific personal jurisdiction with respect to state law claims brought pursuant to the law of the forum state, contests pendent personal jurisdiction with respect to state law claims brought by other plaintiffs pursuant to the laws of non-forum states. To the contrary, "[u]nder the circumstances of this case, where each plaintiff's claim is predicated on the law of the particular state where he or she

purchased [Products] and the claims of the other plaintiff[] as alleged remain unrelated to anything that transpired in [New York], imposing personal jurisdiction for all of the claims because specific jurisdiction may lie as to [Daniel and Duran's] claims would run afoul of the traditional notions of fair play and substantial justice that form the bedrock of any court's personal jurisdiction analysis." Famular, 2017 WL 2470844, at *6 (quoting DeMaria v. Nissan N. Am., Inc., No. 15 C 3321, 2016 WL 374145, at *8 (N.D. Ill. Feb. 1, 2016)); see Spratley v. FCA US LLC, No. 3:17-CV-0062, 2017 WL 4023348, at *7-8 (N.D.N.Y. Sept. 12, 2017); Tulsa Cancer Inst., PLLC v. Genentech Inc., No. 15-CV-157-TCK-TLW, 2016 WL 141859, at *4 (N.D. Okla. Jan. 12, 2016).

Finally, plaintiffs "submit, in the alternative, that implicit in the Class Action Fairness Act of 2005 [("CAFA")] is a grant of personal jurisdiction to the federal courts over the claims of a nationwide class so long as diversity is met and the court in question has specific jurisdiction over some of the claims." Pls.' Opp'n at 27. We disagree. CAFA vests federal district courts with subject matter jurisdiction, not personal jurisdiction. See Wurtz v. Rawlings Co., 761 F.3d 232, 240 (2d Cir. 2014) ("CAFA supplies a basis for federal subject-matter jurisdiction."); Kevin Lampone, Class Certification as a Prerequisite for CAFA Jurisdiction, 96 Minn. L. Rev. 1151, 1154

24

n.19 (2012) ("CAFA does not implicate jurisdiction over the parties—personal jurisdiction.").

Accordingly, Perkins' claims are dismissed pursuant to Rule 12(b)(2) for want of personal jurisdiction.[5]

## IV. Stating a Claim for Which Relief Could Be Granted

Defendant argues that the remaining plaintiffs, Daniel and Duran, have failed to state a claim under GBL §§ 349, 350, and 350-a, or for common law fraud, such that their claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

The standard of review for a motion to dismiss under Rule 12(b)(6) is "substantively identical" to that under Rule 12(b)(1), *supra*. Andrews v. Ford, No. 08 Cv. 3938(LAP), 2009 WL 2870086, at *2 (S.D.N.Y. Sept. 3, 2009) (quoting Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d Cir. 2003)). "In deciding both types of motions, the Court must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff." Pearl River Union Free Sch. Dist. v. Duncan, 56 F. Supp. 3d 339,

---

[5] Even if this Court were to exercise personal jurisdiction with respect to Perkins' MCPA claim, it would nevertheless fail. As a prerequisite to bringing suit under the MCPA, a "plaintiff 'must have first made a reasonable attempt to resolve any claim through an informal dispute settlement program approved by the [Mississippi] Attorney General.'" Lockey v. CMRE Fin. Servs., Inc., No. 1:11CV70 LG-RHW, 2011 WL 2971085, at *2 (S.D. Miss. July 20, 2011) (quoting Miss. Code Ann. § 75-24-15(2)). Perkins' failure to plead compliance with this requirement is fatal to her MCPA claim. See, e.g., BC's Heating & Air & Sheet Metal Works, Inc. v. Vermeer Mfg. Co., 2:11-CV-136-KS-MTP, 2012 WL 642304, at *5 (S.D. Miss. Feb. 27, 2012), reconsideration denied, 2012 WL 1067100 (S.D. Miss. Mar. 28, 2012).

351 (S.D.N.Y. 2015) (quoting <u>Gonzalez v. Option One Mortg.</u>
<u>Corp.</u>, No. 3:12-CV-1470 (CSH), 2014 WL 2475893, at *2 (D. Conn.
June 3, 2014)).

    To survive a motion to dismiss, a complaint must include
"enough facts to state a claim to relief that is plausible on
its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S 544, 570 (2007).
"A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

### a. Functionality of Slack-Fill

    Given the FDCA's preemption requirement, to state an
actionable claim under the GBL, plaintiffs must allege at the
threshold that the slack-fill in the Products is non-functional.[6]
Plaintiffs seek to do so first by offering conclusory
allegations and then by making comparisons to other products
with varying levels of slack-fill.

    According to the First Amended Class Action Complaint,
"[t]he real explanation for Defendants' [sic] oversized and
under-filled packaging lies in Defendants' [sic] desire to
mislead consumers about how much product they are actually
purchasing, thereby cutting costs and increasing sales and
profits. Defendant uses non-functional slack-fill to mislead

_____

[6] There is no dispute that the Products "do[] not allow the consumer to
fully view [their] contents." 21 C.F.R. § 100.100(a).

consumers into believing that they are receiving more candy than they are actually receiving." Am. Compl. ¶ 63; see id. ¶ 12 ("Some of the Product's slack-fill maybe [sic] functional, but most is definitely non-functional."). Courts have routinely found similar allegations insufficient to state a claim. See, e.g., Alce, 2018 WL 1737750, at *7; Bautista, 223 F. Supp. 3d at 190-91; O'Connor v. Henkel Corp., No. 14-CV-5547 (ARR)(MDG), 2015 WL 5922183, at *9 (E.D.N.Y. Sept. 22, 2015) (plaintiffs' claims included only "nake[d] assertions" that product labeling was "deceptive and misleading . . . and designed to increase sales"). Bautista is particularly instructive on this point. There, plaintiff alleged that defendant's package of protein powder was misleading in that it contained 30% non-functional slack-fill. 223 F. Supp. 3d at 190. Specifically, plaintiff alleged "that the 30% empty space was not used to protect product, necessary for enclosing the product, or because of settling." Id. (internal quotation marks omitted). "Such wholly conclusory allegations," the court concluded, "are insufficient to state a nonfunctional slackfill claim." Id. "It may be challenging for a plaintiff to present such facts before discovery . . . , but where a claim is valid it is not impossible; for example, experts in the relevant field can be consulted or comparisons to similar products can be made. In any event, the law is clear that 'the doors of discovery' are

not unlocked 'for a plaintiff armed with nothing more than conclusions.'" Id. at 191 (quoting Iqbal, 556 U.S. at 678-79).

 Plaintiffs' First Amended Class Action Complaint presents the same infirmities. As in Bautista, plaintiffs have failed to plead any facts to support their allegation that the slack-fill in the Products is nonfunctional with respect to the relevant criteria. Plaintiffs have not demonstrated, with factual assertions, that the slack-fill in the Products is unnecessary to protect the Junior Mints, or does not the reflect the requirements of the machines used for enclosing the packages, or is not the result of unavoidable product settling, or is not the consequence of an inability to increase the level of fill or to further reduce the size of the package. See 21 C.F.R. § 100.100(a).

Plaintiffs also attempt to establish functionality, or lack thereof, indirectly. They assert that "[b]y comparing the box of Defendant's Products to the boxes of comparable candies, it is easy to see that the Product contains non-functional slack-fill." Am. Compl. ¶ 22. Plaintiffs make two different types of comparisons, which we consider in turn.

Plaintiffs initially compare Junior Mints to Milk Duds, "ovoid chocolate coated caramel candies," roughly 0.5" in width. Id. In particular, while the 3.5 oz. Product box (0.75" long, 3.25" wide, 5.5" high) is only 57% full, leaving 43% slack-fill,

a 5.0 oz. box of Milk Duds (0.9375" long, 2.625" wide, 6.125" high) is 77% full, leaving 23% slack-fill, suggesting that (at least) some of the difference in slack-fill must be non-functional. Id. ¶¶ 18-22. This effort fails for two reasons.

First, as we explained in Alce v. Wise Foods, "FDA guidance is inconsistent with this approach." 2018 WL 1737750, at *8. The FDA, in promulgating slack-fill regulations, recognized that "differences in the physical characteristics of a given product, including the need to protect the product from breakage, and precision of filling equipment result in a high degree of variability in the level of functional slack-fill within commodity classes." Misleading Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 2957-01, 2959, 1993 WL 1564 (Jan. 6, 1993) (emphasis added); see Misleading Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 64123-01, 64135, 1993 WL 498605 (Dec. 6, 1993) ("FDA recognizes that there is significant variability in the amount of the slack-fill in packages . . . within commodity classes." (emphasis added)). The FDA "collected sufficient data to determine that it is possible to distinguish between functional and nonfunctional slack-fill on a plant-by-plant basis for specific products in given container sizes." 58 Fed. Reg. at 2959. Consistent with those variations, the FDA rejected the idea of a specific volume threshold after which slack-fill in a particular product, such as potato chips in Alce

and chocolate covered candy here, would be deemed non-functional. See 58 Fed. Reg. at 64135 ("[N]o specific numerical value could adequately describe the amount of nonfunctional slack-fill that would be significant.").

Second, even assuming, *arguendo*, comparisons between rival products were a permissible means for establishing non-functional slack-fill, plaintiffs' efforts would still fail. Plaintiffs demonstrate that both Junior Mints and Milk Duds are ovoid, chocolate covered candies of roughly 0.5" in width, but even a cursory inspection of the graphics in the complaint demonstrate that there are significant differences between them. Among other things, the proportions and volumes of the comparator boxes are different; the products are manufactured by different corporations; and the ingredients are different (caramel versus mint filled).

Plaintiffs also make intra-Product comparisons, namely, between the 3.5 oz. and 4.13 oz. Products. Specifically, the 3.5 oz. and 4.13 oz. Products are packaged in boxes of "identical dimensions" yet the latter contains an additional 0.4375 vertical inches of fill when both are held upright. See Am. Compl. ¶¶ 23-24. According to plaintiffs, this difference must be "entirely comprised of non-functional slack-fill." Id. ¶ 23.

There is some support for the proposition that such intra-Product comparisons are sufficient to adequately allege non-functional slack-fill. See <u>Daniel</u>, 287 F. Supp. 3d at 189 ("Plaintiff persuasively argues that because the only difference between the Product and the Assorted Box is in the color and number of candies enclosed, the Product must have <u>some</u> non-functional slackfill."); <u>White v. Just Born, Inc.</u>, No. 2:17-cv-04025-C-NKL, 2017 WL 3130333, at *8 (W.D. Mo. July 21, 2017) (finding significant the fact that defendant had "packaged and sold the same size boxes" of product "for promotional purposes, with less slack-fill."). On the other hand, the FDA has recognized that, in addition to comparisons "between and within commodity classes," there is "significant variability in the amount of slack-fill in packages . . . <u>even within a single-product line</u>." 58 Fed. Reg. at 64135 (emphasis added). Moreover, defendant proffers, citing to a declaration from its "Director of Research & Development and Quality Assurance," that the boxes are not truly identical in size, <u>i.e.</u>, the 4.13 oz. box is 0.0625 inches deeper than the 3.5 oz. box, creating over 9% more volume in the box. Declaration of Gordon Brown ("Brown Decl.") ¶¶ 1, 4-5 & Ex H, Dkt. No. 21; <u>see</u> <u>In re Bristol-Myers Squibb Sec. Litig.</u>, 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004) (on a motion to dismiss, "[t]he court need not accept as true an

allegation that is contradicted by documents on which the complaint relies").

We ultimately need not decide whether such *sui generis* comparisons are sufficient to establish that slack-fill is non-functional. As we describe *infra*, plaintiffs' claims fail on the merits under New York law.

### b. GBL §§ 349, 350, and 350-a

A cause of action under GBL § 349 has three elements: (1) "the challenged act or practice was consumer-oriented"; (2) "it was misleading in a material way"; and (3) "the plaintiff suffered injury as a result of the deceptive act." Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 490 (2d Cir. 2014) (citing Stutman v. Chem. Bank, 95 N.Y.2d 24, 29, 731 N.E.2d 608 (2000)). Claims under GBL §§ 350 and 350-a "must meet all of the same elements as a claim under GBL § 349." Wurtzburger v. Ky. Fried Chicken, No. 16-CV-08186 (NSR), 2017 WL 6416296, at *2 (S.D.N.Y. Dec. 13, 2017) (citing Goshen v. Mut. Life Ins. Co. of N.Y., 98 N.Y.2d 314, 324 n.1, 774 N.E.2d 1190 (2002)).

The New York Court of Appeals has adopted an "objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 126 (2d Cir. 2007) (emphasis added) (quoting Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85

N.Y.2d 20, 26, 647 N.E.2d 741 (1995)); see In re Frito Lay N. Am., Inc. All Nat. Litig., No. 12-MD-2413 (RRM)(RLM), 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013) ("[I]n resolving the reasonable consumer inquiry, one must consider the entire context of the label."); Ackerman v. Coca-Cola Co., No. CV-09-0395 (JG)(RML), 2010 WL 2925955, at *15 (E.D.N.Y. July 21, 2010) (determining the likelihood that reasonable consumers would be misled entails "[v]iewing each allegedly misleading statement in light of its context on the label and in connection with the marketing of [the product] as a whole"). Therefore, GBL §§ 349, 350 and 350-a, "require more than a determination as to whether the slack-fill, standing alone, constitutes a misrepresentation. Rather, [these provisions] require an additional finding that a reasonable consumer in like circumstances would consider the misrepresentation material." See Daniel, 287 F. Supp. 3d at 189-90 (citing Kommer v. Bayer Consumer Health, 252 F. Supp. 3d 304, 312 (S.D.N.Y. 2017), aff'd sub nom. Kommer v. Bayer Consumer Health, a Div. of Bayer AG, 710 F. App'x 43 (2d Cir. 2018) (summary order)). Further, "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." Fink v. Time Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013) (per curiam).

We can easily conclude, as a matter of law, that the slack-fill enclosed in the Products would not mislead a reasonable consumer, as the Product boxes provide more than adequate information for a consumer to determine the amount of Product contained therein.

First, both the standard (ounces) and metric (grams) weight of the candy enclosed is prominently displayed on the front of each Product box, in large sized font and a color differentiated from the package background.[7] Am. Compl. ¶¶ 5-8; see Alce, 2018 WL 1737750, at *10 (concluding that no reasonable consumer would be deceived by slack-fill in potato chip bags that prominently feature the net weight of the contents on the front of the package); United States v. 174 Cases, More or Less, Delson Thin Mints Chocolate Covered, 195 F. Supp. 326, 328 (D.N.J. 1961) (noting, in granting motion to dismiss, that "[t]he Correct net weight of the candy is disclosed on the wrapper of the accused

---

[7] Plaintiffs argue that we must disregard the printed net weight on the front of the Product boxes in light of FDA guidance to the contrary. See 58 Fed. Reg. at 64128-29 ("FDA finds that the presence of an accurate net weight statement does not eliminate the misbranding that occurs when a container is made, formed, or filled so as to be misleading. . . . To rule that an accurate net weight statement protects against misleading fill would render the prohibition against misleading fill in [the FDCA] redundant." (emphasis added)). As demonstrated supra, such guidance is relevant to whether the Products are misleading for purposes of federal law. However, "New York courts, as described above, have adopted an objective definition of what constitutes a 'material misrepresentation' under sections 349 and 350," which, unlike federal law, "takes context into account." Daniel, 287 F. Supp. 3d at 177; see also Bush v. Mondelez Int'l, Inc., No. 16-cv-02460-RS, 2016 WL 7324990, at *3 (N.D. Cal. Dec. 16, 2016) ("Courts, not the FDA, determine whether a product is misleading under [state consumer protection] laws.").

package"), <u>aff'd</u>, 302 F.2d 724 (3d Cir. 1962); <u>cf.</u> <u>Bowring v.</u> <u>Sapporo U.S.A., Inc.</u>, 234 F. Supp. 3d 386, 390-92 (E.D.N.Y. 2017) (no reasonable consumer would believe that Sapporo beer was brewed in Japan, despite the use of Japanese imagery, a trademarked symbol representing Japan, and the word "imported" on the label, where the label also bore a disclosure, in small font, that the beer was "[b]rewed and canned . . . [in] Ontario, Canada" (internal quotation marks omitted)).

Second, with the exception of the 1.84 oz. box, consumers can easily calculate the number of candies contained in the Product boxes simply by multiplying the serving size by the number of servings in each box, information displayed in the nutritional facts section on the back of each box. <u>See</u> Brown Decl. Exs. B, D, G, J;[8] <u>Daniel</u>, 287 F. Supp. 3d at 192 ("[A]bsent exceptional circumstances, a reasonable consumer acting reasonably would find accurate, clearly visible representations of net weight, serving size, and number of servings to offset any misrepresentations arising from non-functional slack-fill."); <u>Wurtzburger</u>, 2017 WL 6416296, at *1, 3 (no reasonable

---

[8] Although the First Amended Class Action Complaint only includes depictions of the front of the Products' packaging, Brown's declaration provides images of the back corresponding to each box, which we may consider on a motion to dismiss. <u>See</u> <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002); <u>Kacocha</u>, 2016 WL 4367991, at *12; <u>Bronson v. Johnson & Johnson, Inc.</u>, No. C 12-04184 CRB, 2013 WL 1629191, at *1 n.1 (N.D. Cal. Apr. 16, 2013); <u>Rooney v. Cumberland Packing Corp.</u>, No. 12-CV-0033-H (DHB), 2012 WL 1512106, at *2 (S.D. Cal. Apr. 16, 2012); <u>McKinniss v. Sunny Delight Beverages Co.</u>, No. CV 07-02034-RGK(JCx), 2007 WL 4766525, at *4 n.1 (C.D. Cal. Sept. 4, 2007).

consumer would believe that a bucket of chicken would be "filled to the rim" when advertisements explained that the bucket consisted of an "eight piece bucket of chicken"); <u>Fermin v. Pfizer, Inc.</u>, 215 F. Supp. 3d 209, 212 (E.D.N.Y. 2016) ("Plaintiffs' own exhibits show that the labels plainly negate any supposed 'reliance' on the size of [an Advil bottle] as it is impossible to view the products without also reading the total number of pills contained in each package. . . . It defies logic to accept that the reasonable consumer would not rely upon the stated pill count.").

There is no suggestion that the displayed weight, serving size, or number of servings per box do not accurately reflect the amount of Product the customer actually receives.[9]

Third, consumers are not operating on a *tabula rasa* with respect to their expectations of product fill. To the contrary, "[b]ecause of the widespread nature of this practice, no reasonable consumer expects the weight or overall size of the

---

[9] Defendant suggests that a consumer's ability to manipulate (<u>e.g.</u>, shake) an opaque container as a means of judging the amount of Product therein renders slack-fill not misleading as a matter of law. <u>See also</u> <u>Hawkins v. UGI Corp.</u>, No. CV 14-08461 DDP (JCx), 2016 WL 2595990, at *4 (C.D. Cal. May 4, 2016) ("[A] consumer can determine whether product remains by audibly sloshing remaining liquid around in the cylinder, or by feeling the heft of a partially full cylinder."). While that may be so in some circumstances, at least one plaintiff, Duran, alleges that because he purchased the Product from a movie theatre concession stand, "it was not logistically possible to manipulate packages before purchase." Am. Compl. ¶ 79; <u>see</u> <u>Escobar v. Just Born Inc.</u>, No. CV 17-01826 BRO (PJWx), 2017 WL 5125740, at *10 (C.D. Cal. June 12, 2017) (distinguishing <u>Hawkins</u> as, *inter alia*, plaintiff purchased the product from a movie theater concession stand and was therefore unable to manipulate the product prior to purchase).

packaging to reflect directly the quantity of product contained therein." Ebner v. Fresh, Inc., 838 F.3d 958, 967 (9th Cir. 2016); see Alce, 2018 WL 1737750, at *11 ("[C]onsumers may have come to expect significant slack-fill in potato chips and other snack products."); Daniel, 287 F. Supp. 3d at 191 ("[B]ecause consumers have come to expect at least some slack-fill, context, including labels, are likely important considerations in assessing product amount or quantity."); Bush, 2016 WL 7324990, at *2 ("[C]onsumers expect there to be some slack-fill in opaque snack containers."); United States v. 116 Boxes, etc., Arden Assorted Candy Drops, 80 F. Supp. 911, 913 (D. Mass. 1948) ("[F]rom buying various types of five-cent candies, cough drops, and lozenges packed by machine in standard rectangular containers, [consumers] ha[ve] come to expect some slack or air space.").

It is perhaps for these reasons that plaintiffs themselves acknowledge they did not solely rely on the package size in making purchasing decisions: "Plaintiffs and Class members viewed Defendant's misleading Product packaging, and reasonably relied in substantial part on its implicit representations of quantity, size, and volume when purchasing the Products." Am. Compl. ¶ 27 (emphasis added). Yet, notwithstanding this acknowledgement, plaintiffs make two arguments for how the abundant information provided to consumers is insufficient to

prevent consumers from being misled about the amount of candy contained in the Product boxes.

First, plaintiffs suggest that only an "unusually diligent consumer could derive the [Product] count by multiplying the number of servings by the number of pieces per serving." Id. ¶ 88. We disagree. The law simply does not provide the level of coddling plaintiffs seek. See Kommer, 252 F. Supp. 3d at 312 ("Assuming that a reasonable consumer might ignore the evidence plainly before him 'attributes to consumers a level of stupidity that the Court cannot countenance and that is not actionable under G.B.L. § 349.'" (quoting Chiste v. Hotels.com L.P., 756 F. Supp. 2d 382, 404 (S.D.N.Y. 2010))); Weinstein v. eBay, Inc., 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011) ("[T]he applicable legal standard is whether a reasonable consumer, not the least sophisticated consumer, would be misled by Defendants' actions."); 116 Boxes, 80 F. Supp. at 913 ("Infantile anticipation is not the test."). The Court declines to enshrine into the law an embarrassing level of mathematical illiteracy. A reasonable consumer is capable of multiplying 3.5 by 12 (42), 4 by 12 (48), and 10 by 12 (120), the number of Junior Mints in the 3.5 oz., 4.13 oz., and 10.5 oz. boxes, respectively. See Brown Decl. Exs. D, G, J.

Second, plaintiffs allege and argue that, even assuming consumers are "excessively diligent" and calculate the number of

candies contained in the Product boxes, they will also rely on the size of the candies as depicted on the front of the packages, and will be "misled into believing that the Product has far more candy than it does due to the falsely sized images, which are larger than the actual candy pieces." Am. Compl. ¶ 90. "In other words, even if a consumer calculated the number of pieces of candy from the nutrition label, such a consumer would still be misled into believing that the Product package contained no non-functional slack-fill because that consumer would falsely believe that the Products contain a small number of relatively large pieces of candy." Id. ¶ 91.

This argument is unpersuasive. As plaintiffs themselves acknowledge, consumers care about the density or volume of a product only as it relates to the amount or quantity of food. See id. ¶ 10 ("When consumers purchase a package of Defendants' [sic] product, they are getting less candy than they bargained for."). "Where consumers only care about the amount or quantity of food, the actual size of the candies is immaterial whe[re, as here] the Product affirmatively discloses how much food the box contains. Consumers receive the same amount or quantity or food, as provided on the label, regardless of the density of the candy and whether the container is larger than necessary." Daniel, 287 F. Supp. 3d at 193-94 (first citing Wurtzburger,

2017 WL 6416296, at *3; then citing <u>Waldman</u>, 714 F. Supp. 2d at 403; and then citing <u>Bautista</u>, 223 F. Supp. 3d at 192 n.8).

Accordingly, given the prominence with which the Products' weight appears on the front of the package, the ease with which consumers can calculate the number of candies contained therein, consumers' expectations of slack-fill, as well as plaintiffs' conceded reliance on factors other than the Products' packaging, we conclude as a matter of law that no reasonable consumer would be misled by the presence of slack-fill, even assuming it were non-functional, in the Products' packaging.[10] Accordingly, plaintiffs' claims under GBL §§ 349, 350, and 350-a are dismissed.

### c. Common Law Fraud

Daniel and Duran's final claim is for common law fraud. <u>See</u> Am. Compl. ¶¶ 154-60. They allege that "[t]hrough its Products' packaging, defendant intentionally made materially false and misleading representations regarding the quantity of candy that purchasers were actually receiving," that they "were induced by, and relied upon" these representations, and that "[d]efendant knew of its false and misleading representations" but "nevertheless continued to promote and encourage customers

---

[10] Because we have concluded that, under New York law, no reasonable consumer would be materially misled by the Products' packaging, we need not consider defendant's contention that plaintiffs were not injured as GBL §§ 349, 350, and 350-a require.

to purchase the Product[s] in a misleading and deceptive manner, intending that Plaintiffs . . . rely" thereon. Am. Compl. ¶¶ 155-57.

To state a claim for fraud under New York law,[11] a plaintiff must allege: "(1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." Fin. Guar. Ins. Co. v. Putnam Advisory Co., 783 F.3d 395, 402 (2d Cir. 2015) (citing Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006)).[12]

"In New York, it is well settled that a plaintiff cannot establish justifiable reliance when, 'by the exercise of ordinary intelligence, it could have learned of the information it asserts was withheld.'" Transnational Mgmt. Sys. II, LLC v. Carcione, No. 14-cv-2151 (KBF), 2016 WL 7077040, at *8 (S.D.N.Y. Dec. 5, 2016) (quoting PPI Enters. (U.S.), Inc. v. Del Monte

[11] While the First Amended Class Action Complaint does not specify under which law plaintiffs assert their fraud claims, "under New York conflict of law principles, fraud claims are governed by the state in which the injury is deemed to have occurred, which is usually where the plaintiff is located." Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 89 F. App'x 287, 288 (2d Cir. 2004) (summary order) (citing Sack v. Low, 478 F.2d 360, 366 (2d Cir. 1973)); Dhir v. Carlyle Grp. Empl. Co., No. 16-cv-06378(RJS), 2017 WL 4402566, at *4 (S.D.N.Y. Sept. 29, 2017). Daniel and Duran reside and purchased the Products in New York, such that we apply New York law to their fraud claims.

[12] Although defendant moves to dismiss plaintiffs' fraud claims for failure to plead with particularity (i.e., pursuant to Federal Rule of Civil Procedure 9(b)), we dismiss plaintiffs' claims for failure to state a claim for which relief could be granted (i.e., pursuant to Federal Rule of Civil Procedure 12(b)(6)).

Foods Co., No. 99 Civ. 3794(BJS), 2003 WL 22118977, at *20 (S.D.N.Y. Sept. 11, 2003), reconsideration denied, 2003 WL 22439647 (S.D.N.Y. Oct. 23, 2003)). Put somewhat differently, where "facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him of knowing . . . the truth or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations." Danann Realty Corp. v. Harris, 5 N.Y.2d 317, 322, 157 N.E.2d 597 (1959) (quoting Schumaker v. Mather, 133 N.Y. 590, 596, 30 N.E. 755 (1892)).

For essentially the same reasons as we concluded that the slack-fill in the Products did not constitute a "material misrepresentation" for purposes of GBL §§ 349, 350, and 350-a, plaintiffs fail to plead reasonable reliance. A person of "ordinary intelligence" could easily ascertain the amount of candy contained in the Product boxes by (1) inspecting the net weight printed on the front, and (2) multiplying the serving size by the number of servings in the box, as provided on the back. Moreover, as discussed *supra*, reliance is even less justified given that "consumers may have come to expect significant slack-fill in [Junior Mints] and other snack

products." Alce, 2018 WL 1737750, at *11. Plaintiffs' fraud claims are therefore dismissed.

## V. Motion to Strike

The foregoing Memorandum and Order dismisses all of plaintiffs' claims as a matter of law. Therefore, the Court need not address the merits of defendant's motion to strike plaintiffs' class claims under Federal Rule of Civil Procedure 12(f), which is denied as moot. Cf. Izquierdo, 2016 WL 6459832, at *10.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss plaintiffs' First Amended Class Action Complaint (Dkt. No. 18) is granted. The Clerk of the Court is respectfully directed to enter judgment for defendant, and close this case.

Dated:  New York, New York
        August __/__, 2018

                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE

43

Counsel for plaintiffs:          C.K. Lee
                                 Anne M. Seelig
                                 Lee Litigation Group, LLC

Counsel for defendant:           David W. Haller
                                 Covington & Burling LLP